592 A.2d 1310

**Marvin S. SAMUELS, Appellant,**

v.

**BLUE CROSS OF GREATER PHILADELPHIA and Pennsylvania Blue Shield and Hahnemann University, Appellees.   (Two Cases)**

Superior Court of Pennsylvania.

Argued March 20, 1991.

Filed May 22, 1991.

Reargument Denied July 30, 1991.

478

Edward J. Weiss, Media, for appellant.

John A. Gephart, Philadelphia, for Blue Cross, appellee.

Paul A. Bucco, Media, for Blue Shield, appellee.

Before CIRILLO, OLSZEWSKI and CERCONE, JJ.

OLSZEWSKI, Judge:

Marvin S. Samuels appeals from two orders granting summary judgment in favor of defendants, Independence Blue Cross (Blue Cross) and Pennsylvania Blue Shield (Blue Shield). Both orders also dismissed Samuels' motions for partial summary judgment against the respective defendants. The trial court based the grant of summary judgment on alternative grounds: first, that the coordination of benefits clauses in the insurance contracts between the respective defendants and Samuels dictate that neither Blue Cross nor Blue Shield is liable to Samuels; alternatively, that the time limitation clauses contained in those contracts prevent Samuels from maintaining these actions against the insurers. Samuels argues that material factual issues exist as to both grounds for the summary judgment orders requiring a reversal and remand for further proceedings. Having examined the record and the parties' arguments, we agree that the time limitation clauses do not prevent Samuels from bringing these actions. Nonetheless, we affirm the trial court's order based upon the coordination of benefits clauses.

The relevant factual and procedural history of these actions may be summarized as follows. Samuels has been covered by the federal Medicare program, Parts "A" and "B", since 1982 as a disabled individual under the age of 65. (Trial court opinion at 2.) Samuels also maintains health insurance with the respective defendant insurers under a Master Comprehensive—UCR 100 plan. (*Id.*, at 2–3.) Samuels has carried this coverage since 1960; the plan is a group plan issued to Center City Proprietors. Coverage was extended to Samuels through Almar Parking Corporation. (*Id.*)

Samuels received medical services, on both an inpatient and outpatient basis, from the Hahnemann University Hospital from March 2, 1986, through April 2, 1987. (*Id.*, at 1–2.) Total charges for outpatient services during that time are alleged to be $13,157.00; total charges for inpatient services amounted to $35,938.80. (Appellant's brief at 5.) Blue Shield paid for the outpatient services, Blue Cross for the inpatient services. On June 17, 1987, both defendant insurers retracted their payment to the Hahnemann Hospital, as Medicare had also paid the hospital for the services rendered to Samuels. (Trial court opinion at 2.) Following an unsuccessful attempt to appeal that denial with the insurers, Samuels filed suit against the respective insurer defendants and Hahnemann Hospital on August 8, 1988. (*Id.*, at 1.)[1]

As an initial matter, we note that the standards applicable to a motion for summary judgment are well settled and clear. Summary judgment is only proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Pa.R.Civ.P. 1035(b), 42 Pa.C.S.A. The movant must demonstrate that no genuine factual issues exist and that he is entitled to judgment as a matter of law. *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 202–05, 412 A.2d 466, 468–69 (1979)

---

1. Hahnemann's preliminary objections to Samuels' complaint were granted on May 10, 1989. Samuels did not appeal that order; therefore, Hahnemann University is no longer a party to these proceedings.

(citations omitted). An appellate court must examine the record in the light most favorable to the non-moving party, who is entitled to the benefit of all reasonable inferences. *Pennsylvania Gas & Water Co. v. Nenna & Frain, Inc.,* 320 Pa.Super. 291, 297–99, 467 A.2d 330, 333 (1983) (citations omitted). It is not the trial court's function to decide factual issues, the inquiry is restricted to a determination of the existence of a material factual dispute. *Washington Federal Savings & Loan Assoc. v. Stein,* 357 Pa.Super. 286, 288–89, 515 A.2d 980, 981 (1986) (citations omitted). All doubts as to the existence of a genuine issue of material fact must be resolved against the movant, as summary judgment is only proper in the clearest of cases. *Thompson Coal, supra,* 488 Pa. at 202–05, 412 A.2d at 468–69 (citations omitted). With these standards in mind, we examine Samuels' claims.

## TIME LIMITATION CLAUSES

■ The contracts drafted by the respective defendant insurers contained clauses limiting the period of time Samuels had to bring an action based on those contracts. The Blue Cross contract required Samuels to bring an action within two years of the date the medical services, payment for which is disputed, were rendered. (Trial court opinion at 6.) The Blue Shield contract required Samuels to bring an action within one year of the date medical services were rendered. (*Id.,* at 4.) These types of provisions have been expressly approved by our Supreme Court. *See, inter alia, Lardas v. Underwriters Insurance Co.,* 426 Pa. 47, 49–50, 231 A.2d 740, 741 (1967) (citations omitted). *See also,* 42 Pa.C.S.A. § 5501(a) specifically allowing written contractual modification of the statute of limitations as long as such modification is reasonable. Nevertheless, an insurer can, in effect, toll this contractually imposed limitations period if, by its actions, it induces an insured to forbear bringing suit within the prescribed period. *Schreiber v. Pennsylvania Lumberman's Mutual Insurance Co.,* 498 Pa. 21, 24–25, 444 A.2d 647, 649 (1982) (citation omitted); *Diamon v. Penn*

*Mutual Fire Insurance Co.*, 247 Pa.Super. 534, 542–48, 372 A.2d 1218, 1222–25 (1977) (citations omitted); *Terpeluk v. Insurance Co. of North America*, 189 Pa.Super. 259, 265–66, 150 A.2d 558, 561 (1959).

■ The defendant insurers initially paid for the services Samuels received at the Hahnemann Hospital. Those payments were retracted on June 17, 1987. Until the insurers retracted the payment, Samuels could not have known that a coverage dispute existed. Samuels was entitled to rely upon the insurers course of conduct of providing payment for the services rendered. Having induced Samuels to forbear bringing suit within the prescribed period, the insurers cannot now raise the contractual limitation as a defense. We hold that where an insurer provides benefits and later retracts payment, any contractual time limitation is tolled until the date of retraction.[2]

■ Additionally, both Blue Cross and Blue Shield provide a claims appeal procedure. By providing the procedure, the insurer induces the insured to make use of it. This procedure allows insureds to request a review of a denial of benefits under the insurance policy. Such voluntary dispute-resolution mechanisms are to be encouraged. They provide an opportunity for an amicable resolution of any denial which arose from an honest mistake or lack of information, conserve the financial resources of both insureds and insurers, alleviate the pressure on the congested dockets of our trial courts, and prevent those courts from becoming claims-processing adjuncts of the insurance industry resolving all disputes no matter how trivial. To adopt the interpretation urged today by the insurers would discourage, rather than encourage, the use of such procedures. Any insured will decide to bring suit rather than appealing

**2.** We note that our holding today resembles the discovery rule which tolls statutes of limitations in many cases until the plaintiff is aware that he has a cause of action. *See, Levenson v. Souser*, 384 Pa.Super. 132, 557 A.2d 1081, *alloc. denied*, 524 Pa. 621, 571 A.2d 383 (1989); *Corbett v. Weisband*, 380 Pa.Super. 292, 551 A.2d 1059 (1988) *alloc. denied*, 524 Pa. 607, 569 A.2d 1367 (1989), and *sub nom Corbett v. DeMoura*, 524 Pa. 620, 571 A.2d 383 (1989).

a denial of benefits within the claims appeal framework when faced with the possibility that his claim will be time-barred if he loses the appeal.

It is a given that the insurer drafts the contract containing both the time limitation clause and the claim appeal procedure. The insurer is "the house" in the insurance game. We will not allow them to stack the deck by interpreting the interplay of these clauses as the insurers request today. We hold that where an insured voluntarily enters into a claim appeal procedure provided by the insurer, any time limitation contained within the insurance contract is tolled until that appeal procedure is concluded. The trial court erred in basing its grant of summary judgment on the time limitation clauses.

## COORDINATION OF BENEFITS CLAUSES

Both insurance contracts contained coordination of benefit clauses. Article III, Section 2 of the Subscription Agreement with Blue Cross provides as follows:

**Exclusions.** Benefits shall not be provided under this Agreement for:

A. Services, facilities or supplies (1) covered by programs created by the laws of the United States ...

(Supplemental record [S.R.] at 56a.) Similarly, the Major Medical benefits provided Samuels under that same Blue Cross contract were subject to a coordination of benefits clause contained in Article V, Section E.:

**Exceptions.** The following shall in no event be considered Covered Medical Expenses:

E. Expenses to the extent paid, or which the Subscriber is entitled to have paid, or to obtain without cost, in accordance with any laws or regulations of any government.... "[A]ny government" includes the Federal ... Government.

(S.R. at 80–81a.)

Likewise, the insurance contract between Samuels and Blue Shield contained a coordination of benefits clause which provides as follows:

COORDINATION OF BENEFITS—All benefits provided under this Agreement are subject to this provision ... (F) Service provided under any governmental program for which any periodic payment is made by the Subscriber shall always be the primary plan, except when prohibited by law, or when the Subscriber has elected Medicare secondary.

(Reproduced record [R.R.] at 28–30a.)

■ The validity of such coordination of benefit clauses was recently examined by this Court in *Dutton v. Educators Mutual Life Insurance Co.*, 381 Pa.Super. 522, 554 A.2d 124, *alloc. denied*, 522 Pa. 619, 563 A.2d 888 (1989). When such clauses are clearly worded and conspicuous, they are enforceable. *Id.* 381 Pa.Super. at 523–24, 554 A.2d at 125.

■ Medicare is clearly a program created by the laws of the United States. Payments made under the Medicare program are made in accord with the laws and regulations of the Federal government. *See generally* 42 U.S.C.A. § 1301 *et seq.* The co-ordination of benefits clauses contained in the Blue Cross contract are sufficiently clear to be enforced. When Medicare paid for Samuels' expenses incurred at the Hahnemann Hospital, Blue Cross became the secondary insurer for these expenses.

■ The Blue Shield co-ordination of benefits clause is even more clearly worded. It refers to Medicare by name. When Medicare paid for the services rendered to Samuels by the Hahnemann Hospital, Blue Shield also became the secondary insurer for these expenses.[3]

■ Samuels contends that these co-ordination of benefits clauses do not apply because the descriptive literature which he received does not coincide with the policy language which it attempts to explain. The *Dutton* Court noted this problem. "[A] problem of notice may arise when

3. Medicare has been subsequently amended to make Medicare the secondary insurer for these types of services. *See,* 42 U.S.C.A. § 1395y(b)(1)(B)(i) (Supp.1990).

a copy of the policy or literature furnished to the individual employee fails to include a limitation which appears in a master group policy." *Id.* 381 Pa.Super. at 528, 554 A.2d at 127 (*citing Group Insurance Policy—Exclusions—Notice*, 6 ALR 4th 835 (1981)). The *Dutton* Court held any notice problem waived as it had not been presented to the trial court. *Id.* Here Samuels has consistently relied upon the language of the booklet distributed to him. Therefore, we hold this issue properly presented and will examine whether that language is controlling as to the exclusion of coverage at issue.

The language in the booklet relied upon by Samuels provides as follows:

### COORDINATION OF BENEFITS

BLUE CROSS PROGRAM

This Blue Cross program is subject to a coordination of benefits provision. Should you or an enrolled dependent be entitled to any benefits or services from another source (excluding an individual insurance policy), benefits under this plan may be reduced to an amount, which together with all such other benefits, will not exceed 100% of any necessary, reasonable and customary item of expense covered under this plan or any other such plan.

BLUE SHIELD PROGRAM

In addition to this program's broad scope of benefits the program has a Coordination of Benefits provision.... When you receive services that are also covered under another plan, a determination is made as to which plan is "primary" and which plan is "secondary" ... If this plan is determined to be the secondary plan, payment for covered services shall not exceed the difference between the primary plan's payment and the charge.... The primary plan will be determined in the following order:

(1) If the other plan does not include a provision to coordinate benefits, it will be the primary plan.

(2) If the other plan does include a provision to coordinate benefits then:

(A) The plan covering the patient as the employee/subscriber is the primary plan.

. . . . .

(D) When the determination cannot be made with the above rules, then the plan that has covered the patient for the longer period of time is the primary plan ...

(R.R. at 51–53a.) Additionally, that literature provided the following limitation applicable to the Blue Shield benefits:

### WHAT IS NOT COVERED

You are not covered for:

payment made under Medicare when Medicare is primary or would have been made if you had enrolled for Medicare and claimed Medicare benefits.

(R.R. at 68–70a.) The literature does state that the information provided is subject to the actual contract language:

### CLAIMS APPEAL PROCEDURE

... [I]t is important for you to understand the reasons for the denial of benefits in order to decide whether you want to appeal ... *You should examine your group agreement, which is on file with your employer. The group agreement is a legal document setting forth the full terms and conditions of your hospital and professional coverages and excluded services.*

. . . . .

This booklet has been prepared so that you may become acquainted with the Blue Cross and Blue Shield program available ... *The program is subject to the terms of the group contract issued by Blue Cross of Greater Philadelphia and Pennsylvania Blue Shield.*

(R.R. at 79a, appellee's brief, exhibit A at 2, emphasis added).[4]

Samuels' argument may be summarized as follows: that the language in the booklet controls, that language is not

---

4. Independence Blue Cross is the successor to Blue Cross of Greater Philadelphia.

clear and so is not enforceable; alternatively, if the language applies, Medicare is secondary, the Blue Cross and Blue Shield coverage is primary. We disagree on the initial, crucial point.[5]

■ The booklet's final section contains a disclaimer that its language governs the coverage between Samuels and the respective defendant insurers and specifically informs Samuels where the actual terms governing the coverage may be found: in the group contract issued by Blue Cross and Blue Shield which is on file with his employer. It is facetious for Samuels to claim in one portion of his brief that he has carefully examined the language as to the claims appeal procedure and that the time limitation of the contract should be tolled because he followed that procedure, then in a separate section deny that he was aware of the disclaimer contained in the description of the appeal procedure. This inconsistency dooms Samuels' contention that the booklet's language as to the coordination of benefits is controlling over the contractual language.

■ It is well settled that a failure to read a contract will not provide a defense to enforcement of the provisions of a contract. *Standard Venetian Blind Co. v. American Empire Insurance Co.*, 503 Pa. 300, 305, 469 A.2d 563, 566 (1983) (citations omitted). We hold that the language of the group contract controls and is sufficiently clear and conspicuous to be enforced. As analyzed above, the coverage provided by Blue Cross and Blue Shield is secondary to the Medicare coverage.

Order affirmed.

---

**5.** We also note that Samuels' reliance on *Dutton* is somewhat misplaced. The *Dutton* Court indicated that notice problems arise when a limitation contained in the contract is absent from the literature distributed to the insured. *Dutton, supra* 381 Pa.Super. at 528, 554 A.2d at 127. The co-ordination of benefits limitation is present in the literature distributed to Samuels, although the description of the operation of the limitation is different. To our reading, the detailed description in the booklet is more confusing than the contractual language it attempts to explain. The issue here is which specific language describing the limitation is applicable.