**BRYN MAWR HOSPITAL**

v.

**COATESVILLE ELECTRIC SUPPLY CO. and Stop Loss Int'l.**

Civ. A. No. 91–2568.

United States District Court,
E.D. Pennsylvania.

Sept. 16, 1991.

As Corrected Oct. 23, 1991.

Paul J. Gelman, Andrew D. Clearfield, Mattleman, Greenberg, Shmerelson & Weinroth, Philadelphia, Pa., for Bryn Mawr Hosp.

Jeffrey S. Rosenblum, Rosenwald & Pollack, Philadelphia, Pa., for Coatesville Elec. Supply Co.

Kevin A. Palmer, Butera, Beausang, Moyer & Cohen, King of Prussia, Pa., for Stop Loss Intern.

## OPINION

CAHN, District Judge.

The defendant, Coatesville Electric Supply Co., has filed a Motion to dismiss pursu-

ant to Fed.R.Civ.P. 12(b)(6), or, in the alternative, for summary judgment pursuant to Fed.R.Civ.P. 56(c). For the reasons set forth below, the plaintiff's claim will be dismissed with leave to amend within thirty days.

### 1. *Factual Background*

The case at bar involves a claim brought by the plaintiff, Bryn Mawr Hospital, against the defendants, Coatesville Electric Supply Company and Stop Loss International ["defendants"] for $698,404.30.[1] The plaintiff claims that it is owed this money because it provided treatment for Shelby Pluck, the daughter of Edward Pluck, Jr. Shelby Pluck was born prematurely on June 25, 1987. Because of her premature birth, and accompanying medical complications, she required hospitalization and extensive medical treatment until August 2, 1988.

When Shelby Pluck was born, Edward Pluck was employed by defendant Coatesville Electric Supply Co. Coatesville Electric Supply Co. provided its employees with health insurance ["the Plan"] underwritten by defendant Stop Loss International. Since the Plan was provided as a term and condition of employment, it is governed by the requirements of the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ["ERISA"]. In addition to providing health insurance for employees, the Plan also covers certain dependents of employees.

On July 29, 1987, Edward Pluck signed form CBS 030/DC—Rev. 7/84 ["the Form"]. The plaintiff contends that this Form operates as an assignment of Edward Pluck's rights to coverage under the Plan. In contrast, the defendants contend that the Form merely directs the Plan to pay the plaintiff directly for services rendered, and that the Form does not operate as an assignment of Edward Pluck's rights.

On April 22, 1991 the defendants moved to dismiss the complaint pursuant to Fed. R.Civ.P. 12(b)(6), or, in the alternative, for summary judgment pursuant to Fed.

R.Civ.P. 56(c). The defendants filed an amended Motion on August 5, 1991. The plaintiff filed its opposition on August 26, 1991. The Motions are therefore ripe for adjudication.

### 2. *Jurisdiction*

■ Before ruling on the instant Motions, the court must determine whether it has jurisdiction over this case. *See, e.g., Kennedy v. Connecticut General Life Ins. Co.,* 924 F.2d 698, 700 (7th Cir.1991); Fed. R.Civ.P. 12(b)(1). This action was originally filed in state court, and was removed by the defendant on April 19, 1991. It is not clear from the removal petition whether the defendant claims jurisdiction pursuant to 29 U.S.C. § 1132(a)(1)(B) (providing federal jurisdiction over a suit brought "by a participant or beneficiary ... to recover benefits due to him under the terms of his plan [or] to enforce his rights under the terms of the plan ...”), or 28 U.S.C. § 1331 (federal question jurisdiction).

The Court of Appeals for the Ninth circuit was the first to assert jurisdiction over an assigned ERISA claim pursuant to 29 U.S.C. § 1132(a)(1)(B). In *Misic v. Building Service Employees Health and Welfare Trust,* 789 F.2d 1374 (9th Cir.1986), the court examined the policies ERISA was meant to implement and "conclud[ed that] ERISA does not forbid assignment by a beneficiary of his right to reimbursement under a health care plan to the health care provider." *Misic,* 789 F.2d at 1377 (footnote omitted). After concluding that ERISA rights can be assigned, the *Misic* court held that the right to federal jurisdiction conferred by 29 U.S.C. § 1132(a)(1)(B) could also be assigned to a health care provider. *See Misic,* 789 F.2d at 1378. The Courts of Appeals for the Fifth, Sixth, and Seventh Circuits have adopted the reasoning set forth in *Misic. See Cromwell v. Equicor–Equitable HCA Corp.,* 944 F.2d 1272, 1277–78 (6th Cir.1991); *Kennedy,* 924 F.2d at 700; *Hermann Hospital v. MEBA*

---

**1.** The Motion before the court was filed by defendant Coatesville Electric Supply Company. Motions filed by defendant Stop Loss International will be the subject of a separate order.

*Medical & Benefits Plan,* 845 F.2d 1286, 1289–90 (5th Cir.1988).[2]

The Third Circuit Court of Appeals, however, has declined to adopt the rational or the conclusions reached by the *Misic* court. Instead, in *Northeast Dept. ILGWU Health and Welfare Fund v. Teamsters Local Union No. 229 Welfare Fund,* 764 F.2d 147 (3d Cir.1985), the court held that right to federal jurisdiction granted by 29 U.S.C. § 1132(a)(2)(B) cannot be asserted by anyone except for a plan beneficiary or participant. *See Northeast,* 764 F.2d at 151;[3] *see also Allstate Ins. Co. v. The 65 Security Plan,* 879 F.2d 90, 94 (3d Cir. 1989).

Although the *Northeast* court refused to allow jurisdiction over an assigned ERISA claim to be predicated on 29 U.S.C. § 1132(a)(1)(B), it allowed the trial court to assert jurisdiction over a dispute between two ERISA funds under 28 U.S.C. § 1331, since, in the opinion of the court, the claim was based on federal common law. *See Northeast,* 764 F.2d at 157 (Becker, J.) and 1165 (Sloviter, J., concurring); *cf. Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 67, 107 S.Ct. 1542, 1548, 95 L.Ed.2d 55 (1987) (holding that 28 U.S.C. § 1331 provides jurisdiction over a suit which involves an ERISA plan, even though the suit purports to raise only state law claims, since the suit is "necessarily federal in character by virtue of the manifest intent of congress.").

Judge VanArtsdalen was forced to reconcile *Misic* and *Northeast,* and their progeny, in *Albert Einstein Medical Center v. National Benefit Fund for Hospital and Health Care Employees,* 740 F.Supp. 343 (E.D.Pa.1989). *Einstein* involved a suit brought by hospitals against an ERISA plan to recover costs incurred in treating plan beneficiaries. In deciding whether or not removal jurisdiction was proper, Judge

VanArtsdalen decided that the holdings in *Northeast* and *The 65 Security Plan* should be read narrowly, and that jurisdiction over a suit brought by an assignee of plan benefits was proper. *See Einstein,* 740 F.Supp. at 348–50. This court finds Judge VanArtsdalen's reasoning persuasive, and adopts it here. Jurisdiction over this claim is therefore proper.

### 3. *Standards for Dismissal or Summary Judgment*

When ruling on a 12(b)(6) Motion, a court must accept as true all factual allegations in the ... complaint and all reasonable inferences that can be draw from them. The ... complaint must be construed in the light most favorable to the plaintiffs, and can be dismissed only if the plaintiffs have alleged no set of facts upon which relief could be granted.

*Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1410 (3d Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991).

If, in deciding a Motion filed pursuant to Fed.R.Civ.P. 12(b)(6), the court goes beyond the pleadings, and considers depositions, affidavits, or other papers, the court may treat the Motion as one for summary judgment pursuant to Fed.R.Civ.P. 56(c). *See Boyle v. Governor's Veterans Outreach and Assistance Center,* 925 F.2d 71, 74 (3d Cir.1991). The sole requirement is that the court give all concerned parties notice of the court's intention to treat the Motion as one made pursuant to Fed.R.Civ.P. 56(c), and to allow all parties an opportunity to submit affidavits or depositions for the court's consideration. *See Rose v. Bartle,* 871 F.2d 331, 341–42 (3d Cir.1989). In the case at bar, both of the parties have been offered ample opportunity to submit affida-

---

**2.** It does not matter, for jurisdictional purposes, that the alleged assignment of Edward Pluck's ERISA rights may not be valid. Courts which take jurisdiction over assigned claims of ERISA rights under 29 U.S.C. § 1132(a)(1)(B) do so whenever there is a colorable claim of an assignment; a court is not divested of jurisdiction if the assignee does not prevail on the merits. *See Kennedy,* 924 F.2d at 700.

**3.** Although Judge Fullam, in dissent, would have allowed the jurisdiction conferred by 29 U.S.C. § 1132(a)(1)(B) to be conferred upon an assignee, the majority expressly rejected this position. *See Northeast,* 764 F.2d at 154 n. 6.

vits or other proof for the court's consideration.

Under Fed.R.Civ.P. 56(c),

[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). In *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the Supreme Court clearly stated that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex*, 477 U.S. at 327, 106 S.Ct. at 2554 (citation omitted).

This does not, however, give a trial court the ability to decide disputed factual issues. "[O]n a motion for summary judgment the responsibility of the district court is to determine if there are triable issues, rather than to try those issues and make findings based on the affidavits and other materials accompanying the motion." *Country Floors v. Partnership of Gepner and Ford*, 930 F.2d 1056, 1062 (3d Cir.1991). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986); *Boyle*, 925 F.2d at 75; *In Re Paoli R.R. Yard PCB Litigation*, 916 F.2d 829, 860 (3d Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1584, 113 L.Ed.2d 649 (1991).

### 4. *Deficiencies in the Pleadings*

■ In its Motion, the defendant points to a number of alleged deficiencies in the pleadings. The court has examined the

pleadings and has found them to be vague on several key issues. Rather than attempting to "read things into the pleadings", or speculate as to what the plaintiff intended to plead,[4] the defendant's Motion to dismiss will be granted, and the plaintiff will be given leave to file an amended complaint. In this way, the plaintiff can clearly plead what the plaintiff alleges (in its briefings) it intended to plead in the original complaint.

### 5. *Amendments Pursuant to Fed. R.Civ.P. 15*

It is permissible for the court to dismiss the complaint at bar, but still allow the plaintiff leave to file an amended complaint. *See, e.g., Einstein*, 740 F.Supp. at 352. It is the opinion of the court that doing so would serve the interests of justice.

#### a. Ability to Amend

Fed.R.Civ.P. 15(a) provides, in the relevant part, that

a party may amend the party's pleading ... by leave of court ... and leave shall be freely given when justice so requires.

Fed.R.Civ.P. 15(a). Courts have consistently held that the policies embodied in Rule 15(a) allow for the liberal use of amendments. *See Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir.1989) (emphasizing the "strong liberality ... in allowing amendments under Rule 15(a)."). Under the prevailing standards, "[u]nless the opposing party will be prejudiced, leave to amend should generally be allowed." *Charpentier v. Godsil*, 937 F.2d 859, 864 (3d Cir. 1991).

■ In order to prevent a party from filing an amended complaint, the non-moving party must do more than simply claim to be prejudiced. A court will only refuse

---

**4.** Unfortunately, the submissions by the parties have not served to clarify the meaning of the pleadings. Indeed, the submissions have raised more questions than they have answered. As the section entitled *Suggestions for Future Briefing* makes clear, disputed issues of material fact

abound in this case. Summary judgment is therefore inappropriate. *See Taylor v. Continental Group*, 933 F.2d 1227, 1232 (3d Cir.1991) ("the interpretation of ambiguous plan provisions is a question of fact.").

to allow an amendment if the opposing party can "show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence...." *Bechtel,* 886 F.2d at 652. *Cf. Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

The defendants can show no prejudice in this case. The original complaint has put the defendants on notice of the claims the plaintiff wishes to assert. The trial date is not imminent, and discovery has not begun. Indeed, the defendants have not even filed an answer. Instead, one filed a pre-answer 12(b)(6) motion. For these reasons, allowing the plaintiff to file an amended complaint will not prejudice the defendants.

### b. Relation Back/Statute of Limitations

Fed.R.Civ.P. 15(c) provides, in the relevant part, that

> [w]henever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading.

Fed.R.Civ.P. 15(c).

In this case, any amended complaint the plaintiff chooses to file would arise out of the same transaction which formed the basis for the original complaint. For this reason, the amended complaint will relate back to the date of filing of the original complaint. Although there is a possibility, outlined below, that the original complaint was barred by the statute of limitations, if the original complaint was, in fact, timely, the amended complaint will be deemed timely as well under the relation back doctrine.

### 6. *Suggestions for Future Briefing*

In order to promote judicial economy and the orderly administration of justice, the court will set forth issues which appear, at this stage of the case, to require clarification. Although this is by no means intended to bind the parties or to force them to advance certain arguments, it may help to narrow the issues and provide guidance for future briefing.

### a. Whether the Form Signed by Edward Pluck Constituted an Assignment of Edward Pluck's Rights Under the Plan

The plaintiff claims to have standing, and to be entitled to $698,404.31, based on an assignment of Edward Pluck's rights under the Plan. The defendant contends that the Form upon which the plaintiff bases its claim of an assignment merely directs the Plan to pay the plaintiff directly for services rendered, and does not function as an assignment. Since the terms of the Form do not mention an assignment, an ambiguity may exist. In order to interpret the Form, the court will have to rely on parol evidence. *See Mellon Bank v. Aetna,* 619 F.2d 1001, 1011 (3d Cir.1980). For this reason, it would be helpful if the parties would submit affidavits from the signatories to the Form detailing their intent.

### b. Whether the Plan Administrator Has Discretion to Confer Benefits

The Supreme Court has held that "the denial of [ERISA] benefits ... is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989). *See also Taylor v. Continental Group,* 933 F.2d 1227, 1232 (3d Cir.1991). If the plan gives the administrator discretionary authority, the administrator's decision will be overturned only when the administrator has abused his discretion. *See Bruch,* 489 U.S. at 111, 109 S.Ct. at 954.

While the defendant has cited the relevant standards, and has argued that the plaintiff has failed to allege that the Plan administrator abused his discretion in denying benefits to Edward Pluck, neither party has directed the court's attention to a passage in the Plan which grants discretionary authority to the administrator. The court been unable to discover such a passage on its own. Briefing this issue, with appropriate references to the text of the Plan,

would help the court decide which standard of review is appropriate.

### c. When Does a Loss Occur

■ The defendant has argued that the plaintiff's claim was not timely. This argument is based on a section of the Plan entitled "Legal Actions." Plan, page 14. This passage provides that legal actions seeking to recover under the Plan must be filed within two years of when proof of loss must be filed.[5] Contractual shortenings of the statute of limitations, such as this one, are enforceable. *See Hospital Support Services v. Kemper Group*, 889 F.2d 1311, 1316 (3d Cir.1989); *Samuels v. Blue Cross*, 405 Pa.Super. 476, 592 A.2d 1310, 1312 (1991).[6] The Plan provides that proof of loss must be filed within ninety days of the date of loss for which the claim is made. *See* Plan, page 14, section "Proof of Loss."

Based on this clause, the defendants argue that, since Shelby Pluck was born (and hospitalized) on July 25, 1987, proof of loss had to be filed by September 25, 1987, and any lawsuits commenced before September 25, 1989. Since the complaint at bar was filed on October 30, 1989, the defendants assert that it is time barred.

■ In making this argument, the defendants neglect the fact that the Plan does not define "loss." While Shelby Pluck was hospitalized on July 25, 1987, she remained hospitalized (according to the parties) until August 2, 1988. If the loss occurred when Shelby Pluck was released from the hospital, a suit could be filed, under the terms of the Plan, until November 2, 1990. Under this interpretation of the rule set forth in the Plan, the complaint would not be time barred.

It is also possible that the loss was ongoing. Such an interpretation would allow the plaintiff to recover for all losses sustained during a period of two years and ninety days before the filing of the complaint. While this would undoubtedly lessen the plaintiff's possible recovery, it would not prevent the claim from going forward.

If the plaintiff chooses to file an amended complaint, the parties should be prepared to brief the issue of when a loss is deemed to occur under the Plan. Again, since the Plan seems to be ambiguous, the court will have to rely on parol evidence in order to determine the Plan's meaning.

### d. Was An Appeal From the Plan Administrator's Denial of Coverage Taken, or Was the Failure to Appeal the Denial of Coverage Justified

The plaintiff's complaint does not mention whether an appeal was taken from the administrator's decision to deny coverage.[7] The defendant correctly points out that "the federal courts have generally not entertained such an action [for ERISA benefits] where the party bringing the action has failed to exhaust administrative remedies." *Wolf v. National Shopmen Pension Fund*, 728 F.2d 182, 185 (3d Cir.1984). *See also Zipf v. American Telephone and Telegraph Co.*, 799 F.2d 889, 892 (3d Cir. 1986).

■ There is, however, an exception to the general rule requiring beneficiaries to exhaust their administrative remedies before suing to recover ERISA benefits. "[C]ourts have recognized an exception [to the exhaustion requirement] when resort to the administrative process would be futile." *Berger v. Edgewater Steel Co.*, 911 F.2d 911, 916 (3d Cir.1990), *cert. denied*, ―― U.S. ――, 111 S.Ct. 1310, 113 L.Ed.2d 244 (1991). For this reason, the plaintiff's failure to plead that it has exhausted administrative remedies under the plan is not a fatal defect. If the plaintiff did not ex-

---

**5.** The passage also provides that legal actions cannot be filed within sixty days of the filing of a proof of loss. Presumably this provision is designed to give the administrator time to decide whether or not to pay the claim.

**6.** Insofar as state law (such as statutes of limitations) is applicable to this dispute, this court is bound to look to the law of Pennsylvania. *See*

*Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

**7.** The Plan provides for such appeals. *See* Plan, page 15, section "Appealing a Claim."

haust administrative remedies, however, the plaintiff should specify, either in the complaint or in subsequent affidavits, the reasons why such appeals would have been futile.

### 7. Suggestions for Omissions from Future Briefing

Again, the court would not presume to limit the arguments which counsel may make. The court does feel, however, that the parties may have allowed certain peripheral issues to distract them from the main issues involved in this case. Since this case involves a number of important issues, which will take a great deal of effort to brief and argue, the court would like to offer its thoughts as to which issues do not merit such intensive treatment (if indeed they merit any treatment at all).

#### a. Ineligibility for Coverage Based on Shelby Pluck's Out-of-Wedlock Birth

The defendant has argued that the Plan limits dependant coverage to legitimate dependents of employees. The plaintiff has responded with a plethora of citations to cases in which courts have found that the Equal Protection Clause prohibits discrimination against out-of-wedlock children. While these citations are correct, there is no need to reach constitutional issues. The Plan, by its very terms, plainly includes out-of-wedlock children as covered dependents.

The definition of covered dependents begins by referring to "the unmarried child of a covered employee *or* his lawful spouse." Plan, page 2, section "Covered Dependant" (emphasis supplied). If the drafters of the Plan wished to limit coverage to legitimate children, the drafters would have defined a covered dependant as "the unmarried child of a covered employee *and* his lawful spouse." The drafters' choice of the disjunctive clearly indicates their intent to extend dependant coverage to employees' out-of-wedlock children. All that is required for a child to be a dependant child is for the child to be under nineteen years of age and to have a parent who is employed by Coatesville Electric Supply Co.

#### b. Ineligibility for Coverage Based on Pre–Existing Conditions/Not Becoming a "Covered Dependant"

The defendant has argued that Shelby Pluck is ineligible for coverage because her hospitalization resulted from a pre-existing condition. While the November 1, 1985 amendment to the Plan does exempt pre-existing conditions from coverage under the Plan, Shelby Pluck was not afflicted with such a condition.

Shelby Pluck became a covered dependant, if at all, when she was born. A pre-existing condition is defined by the amendment as one "for which medical care, treatment or services were received within the three (3) month period immediately preceding the date such person became covered under the Plan." The defendants have *not*, and indeed they *cannot*, allege that Shelby Pluck received treatment for her birth defects *prior* to her birth. For this reason, any conditions she might have had were not pre-existing within the terms of the Plan.

Nor can the defendant argue that the complaint should be dismissed because Shelby Pluck never became a covered dependant because she never entered into active service. In support of its Motion to dismiss, the defendant cites Plan language which provides that "[a] covered dependant will be considered in active service on the day if he is then engaging in all the normal activities of a person in good health of the same age and sex, and he is not confined in a medical facility." Plan, page 2, section "Active Service" (footnote omitted).

A later section of the Plan, however, provides an exclusion of coverage for "routine care of a newborn child, *except* for additional expenses for services required because of severe medical or surgical complication." Plan, page 27, section 13 (emphasis supplied). This language clearly contemplates coverage for extraordinary childbirth expenses (such as those incurred by Shelby Pluck). At the very least, the

direct contradiction between these two Plan sections creates a triable issue of fact.

### c. The Applicability of the "Discovery Rule"

■ The plaintiff has asserted that Edward Pluck did not know that he was Shelby Pluck's father until some time after her birth. This, according to the plaintiff, serves to toll the running of the relevant statute of limitations. While it is true that Pennsylvania has adopted the "discovery rule" which serves to toll the running of a statute of limitations until the plaintiff discovers (or should have discovered) the injury, *see Osei–Afriyie v. Medical College of Pennsylvania,* 937 F.2d 876, 881 (3d Cir. 1991); *Samuels,* 592 A.2d at 1313 n. 2, it is not clear that the rule applies to this case.

Although neither party has specified when Edward Pluck allegedly realized that he was Shelby Pluck's father, Edward Pluck signed the Form in which he, at the very least, directed the Plan to pay for Shelby Pluck's medical expenses, on July 27, 1987. It would seem untenable to argue that, while Edward Pluck signed a form directing his insurer to provide dependant coverage to Shelby Pluck, he nonetheless did not know that he was Shelby Pluck's father. Since Edward Pluck must have know that he was Shelby Pluck's father on July 27, 1987, the discovery rule, even if applicable, would not aid the plaintiff if the loss occurred when Shelby Pluck was born on June 25, 1987.

### 8. *Conclusion*

For the reasons set forth above, the complaint at bar is dismissed. The plaintiff may file an amended complaint without prejudice within thirty days.