**Robert E. YINGLING, Plaintiff,**

v.

**UNUM LIFE INSURANCE COMPANY OF AMERICA, Defendant.**

**Civ. A. No. 1:CV–96–1812.**

United States District Court, M.D. Pennsylvania.

April 25, 1997.

Richard Oare, Suzanne S. Smith, York, PA, William P. Dale, Charles F. Fuller, McChesney & Dale, Bowie, MD, for Plaintiff.

E. Thomas Henefer, Stevens & Lee, Reading, PA, for Defendant.

## MEMORANDUM

CALDWELL, District Judge.

### I. *Introduction.*

In this diversity action controlled by Pennsylvania law, the defendant, UNUM Life Insurance Company of America, has filed a motion under Fed.R.Civ.P. 12(b)(6) to dismiss the plaintiff's amended complaint. The plaintiff, Ronald E. Yingling, seeks to recover disability benefits under the policy UNUM issued to his employer.

The motion argues that the action is barred by the insurance policy's contractual period of limitations. The plaintiff's opposition to the motion requires us to decide, among other things, whether the defendant waived the limitations period by leading the plaintiff on and whether a purported ambiguity in the policy language dealing with the submission of claims renders the plaintiff's lawsuit timely.

Because the motion relied on matters outside the amended complaint, by order, dated April 2, 1997, we converted it to one for summary judgment. We therefore apply the well established standard for deciding motions under Fed.R.Civ.P. 56 to the motion, *see Davis v. Portline Transportes Maritime Internacional,* 16 F.3d 532, 536 n. 3 (3d Cir.1994), and present the following undisputed facts in the light most favorable to the plaintiff.

### II. *Background.*

According to the amended complaint, the plaintiff worked as a business manager and board secretary with the Spring Grove Area School District in Spring Grove, Pennsylvania. The School District had a group long-term disability policy with UNUM. The policy contained the following three-year limitation on when suit could be brought to enforce rights under it:

#### H. LEGAL PROCEEDINGS

A claimant or the claimant's authorized representative cannot start any legal action:

1. . . .

2. more than 3 years after the time proof of claim is required.

(UNUM policy, Section VI, captioned "General Policy Provisions" at pages L–GPP–2 and 3, attached as exhibit A to the amended complaint). In turn, the policy had the following provision on submission of a proof of claim:

#### F. NOTICE AND PROOF OF CLAIM

1. Notice

a. Written notice of claim must be given to the Company within 30 days of the date disability starts, if that is possible. If that is not possible, the Company must be notified as soon as its is reasonably possible to do so.

b. When the Company has the written notice of claim, the Company will send the insured its forms. If the forms are not received within 15 days after written notice of claim is sent, the insured can send the Company written proof of claim without waiting for the form.

2. Proof

a. Proof of claim must be given to the Company. This must be done no later than 90 days after the end of the elimination period.

b. If it is not possible to give proof within these time limits, it must be given as soon as reasonably possible. But proof of claim may not be given later than one year after the time proof is otherwise required.

c. Proof of continued disability and regular attendance of a physician must be given to the Company within 30 days of the request for the proof.

d. The proof must cover:

   i. the date disability started;

   ii. the cause of disability;

   iii. how serious the disability is.

(UNUM policy, Section VI, captioned "General Policy Provisions" at page L–GPP–2). The elimination period is defined as "a period of consecutive days of disability for which no benefit is payable" as shown in the policy specifications. (UNUM policy at page L–DEF–1). The policy specifications set a period of 90 days for the elimination period. (UNUM policy at page L–PS–1).

The plaintiff avers that he was exposed to various chemicals in October 1989 during a School District renovation project. (Amended complaint, ¶¶ 9 and 11). As a result, he alleges he became "hypersensitized to common chemicals, foods, and environmental allergens" which have caused him "to experience severe bodily symptoms and reactions to minimal chemical exposures." (*Id.* at ¶ 10). The plaintiff became disabled on December 5, 1990, and was forced to stop working on that date, (*id.* at ¶. 13), although he unsuccessfully attempted to return to work part-time for a two-week period beginning April 16, 1991. (*Id.* at ¶ 14).

Thereafter, the parties exchanged numerous letters about coverage for the plaintiff. We provide the following chronology but, aside from July 19, 1991, the date of the plaintiff's application for benefits, several dates are important to the resolution of the defendant's motion: October 20, 1993, the date of an UNUM letter finally denying coverage and advising the plaintiff he had 60 days to appeal; February 17, 1994, the date the appeal was denied; June 17, 1994, the date the plaintiff inquired about further administrative rights and the deadline for filing a lawsuit; and August 2, 1994, the date the defendant responded that all administrative rights had been "technically" exhausted and informed the plaintiff that suit could be brought within three years after a proof of claim was required.

As noted, on or about July 19, 1991, plaintiff submitted an application for benefits on standard UNUM forms, claiming total disability arising from his work-related exposure to chemicals. (Amended complaint, ¶ 37; plaintiff's original complaint, exhibit B; defendant's exhibit B). The application listed December 5, 1990, as the starting date of disability and that the plaintiff had unsuccessfully attempted to return to work part-time from April 16, 1991, to May 10, 1991.

On or about February 18, 1992, UNUM notified plaintiff that there was no evidence of a physical disability but that he was being approved for disability based on psychological grounds. UNUM also informed him that, in accord with policy language limiting coverage for mental illness, he would be receiving only 24 months of disability coverage ending on October 21, 1993, and that he would have to submit periodic reports on his condition. The letter additionally stated: "If you disagree with this determination, please submit further evidence that would support your physical condition and we will evaluate it." (Plaintiff's original complaint, exhibit C; defendant's exhibit C).

On or about February 27, 1992, the plaintiff wrote the defendant informing the company that he was accepting the benefits under protest and that he would submit the

appropriate "medical updates through [his] period of convalescence." (Amended complaint, ¶ 41; plaintiff's original complaint, exhibit D) (brackets added). The plaintiff later provided additional medical evidence. (Amended complaint, ¶ 42).

On August 26, 1992, the defendant wrote the plaintiff about an administrative appeal of the company's decision that the plaintiff had taken in March 1992. UNUM stated that after a complete review of the file and an independent medical examination by a specialist in occupational medicine, it was standing by its original decision that his disability was "primarily of psychiatric origin" and that benefits would end on October 21, 1993. (Amended complaint, ¶ 43; plaintiff's original complaint, exhibit E; defendant's exhibit D).

On September 4, 1992, the plaintiff wrote to defendant expressing his dissatisfaction with the decision in his case and hinting that UNUM was more concerned about limiting its exposure than compensating him for his real disability. He also supplied some medical literature about multiple chemical sensitivities. (Amended complaint, ¶ 44; plaintiff's original complaint, exhibit F). The defendant did not respond to this letter.

Almost a year later, on July 27, 1993, apparently as part of the company's review of the plaintiff's coverage, the defendant wrote the plaintiff requesting updated information on his condition. It also took this opportunity to acknowledge the plaintiff's dissatisfaction with the benefits being provided, and stated that it would "be happy to review any additional medical information" that the plaintiff might send, but that benefits were scheduled to end on October 21, 1993. (Amended complaint, ¶ 45; plaintiff's original complaint, exhibit G; defendant's exhibit E).

On August 31, 1993, the defendant wrote the plaintiff because he had not responded to the July 27 letter and again asked for updated medical information. UNUM also reiterated its willingness "to review any medical evidence ... to support .continued disability from a physical standpoint." (Plaintiff's original complaint, exhibit H; defendant's exhibit F). In regard to physical disability, the let-

ter also stated: "As of today's date, we have not received any new evidence from you. Therefore, our position on your claim remains unchanged and your benefits will cease on October 21, 1993."

On September 15, 1993, in response to the July 27 letter, the plaintiff provided updated medical information. (Amended complaint, 1 46).

On October 20, 1993, the defendant wrote the plaintiff acknowledging receipt of the supplemental medical statement from Dr. Grace Ziem (apparently part of the information supplied on September 15) and informing him it had concluded that he had no physical disability, that he suffered from a psychological condition instead, and that it was denying any further liability and closing his file. (Amended complaint, ¶ 47; plaintiff's original complaint, exhibit I; defendant's exhibit G).

The October 20 letter also advised the plaintiff that he could seek review of the decision by sending a written request within 60 days to the "LTD Quality Review Section." It also informed him that if he failed to seek review, the decision would be final.

On December 15, 1993, the plaintiff filed his request for review. (Amended complaint, ¶ 48; plaintiff's original complaint, exhibit J). He ended his request by writing: "I await your review and response on my case so that we may proceed through the process outlined in the policy. It is my understanding that a decision shall be made no later than 60 days." (Plaintiff's original complaint, exhibit J).

On January 15, 1994, the defendant acknowledged receipt of the request for review. (Amended complaint, exhibit B).

On February 17, 1994, the defendant wrote plaintiff advising him that its October 20, 1993 decision was correct and detailed its reasons, noting that it had reviewed the plaintiff's medical records and reports of various physicians. The concluding paragraph read, in pertinent part, as follows: "We regret our determination is not favorable; however, we are limited by the provisions of the policy." (Plaintiff's original complaint, exhib-

it K; defendant's exhibit H). No offer was made to consider additional evidence.

Some five months later, on June 17, 1994, the plaintiff wrote the defendant, in pertinent part, as follows:

Reference is made to your denial letter of February 17, 1994 relative to my claim for benefits.

Please provide me with the following information. . . . :

1. Are there any further levels of appeals or administrative remedies available on my claim or has the appeals process been exhausted [?]

2. Please indicate the last date that legal proceedings can be initiated according to your records.

(Plaintiff's original complaint, exhibit L; defendant's exhibit I) (brackets added).

On August 2, 1994, defendant responded as follows:

1. Administrative remedies were technically exhausted following the determination communicated in our letter of February 17, 1994. However, we are willing to review and take into consideration any supplementary information provided and advise you if it changes our position regarding this claim.

2. The policy states that the claimant or the claimant's authorized representative cannot start any legal action until 60 days after proof of claim has been given, or more than 3 years after the time proof of claim is required.

Our position regarding your disability claim . . . is outlined in our letter of February 17, 1994 . . . Your claim has been closed and we will not continue our investigation of your condition at this time.

(Plaintiff's original complaint, exhibit M; defendant's exhibit J).

The plaintiff avers that on January 25, 1995, he "provided additional medical information in response to Defendant's request." (Amended complaint, ¶ 52).

Almost a year later, on January 3, 1996, Dr. Dennis Lankford also submitted additional medical information in support of what plaintiff describes as an "appeal," but which

Dr. Lankford called a request that UNUM consider reopening the plaintiff's claim. (Amended complaint, ¶ 53; plaintiff's original complaint, exhibit O).

On January 23, 1996, UNUM wrote the plaintiff, acknowledging Dr. Lankford's letter and stating, "As you are aware, a previous determination was made on your claim. We will review this new information within the next 60 days to determine if this will change our original decision." (Amended complaint, ¶ 54; plaintiff's original complaint, exhibit P; defendant's exhibit K).

On March 12, 1996, defendant wrote the plaintiff that "because so much time has passed, we cannot review your claim at this time and must uphold the denial of benefits." UNUM also attached a copy of the February 17, 1994 letter, upholding the denial of benefits. (Amended complaint, ¶ 55; original complaint, exhibit Q; defendant's exhibit L).

On May 3, 1996, the plaintiff, through a letter from his attorney, once again requested benefits. (Amended complaint, ¶ 56; original complaint, exhibit R).

On September 20, 1996, the defendant rejected this request on the grounds that: (1) the March 12, 1996 letter already informed the plaintiff that any further request for coverage was too late; (2) the denial was made after extensive investigation and upheld on two previous occasions, February 17, 1994, and August 2, 1994; and (3) the information supplied in January 1996 was also too late. (Amended complaint, 1 57; original complaint, exhibit S; defendant's exhibit M).

This lawsuit was filed on October 4, 1996.

### III. *Discussion.*

The defendant contends that this action is barred by the contractual period of limitations in its policy, which prohibits lawsuits "more than 3 years after the time proof of claim is required." The defendant also points out that contractual periods of limitations are accepted in Pennsylvania under both case law, see *General State Authority v. Planet Insurance Co.*, 464 Pa. 162, 346 A.2d 265 (1975), and the specific statutory provision authorizing the defendant to adopt the

limitations language found in its policy. *See* 40 P.S. § 753(A)(11) (Purdon 1992).

Under the policy language, proof of claim must be given "no later than 90 days after the end of the elimination period," or if this is not possible, within some reasonable time thereafter, but at the latest, not more than 1 year after "the time proof is otherwise required." The defendant maintains, and we agree (absent circumstances not present in the instant case that would toll this time frame), that this language places an outside limit of one year from the end of the elimination period to file a proof of claim. For this policy, the elimination period is 90 days.[1]

Within this framework, the defendant argues that, granting the plaintiff the benefit of every doubt, his last possible deadline for filing a lawsuit was November 7, 1995, about eleven months before October 4, 1996, the date this action was initiated. (The defendant provides an alternative analysis that puts the deadline earlier on June 4, 1995, but since even the most liberal analysis results in a conclusion that the suit is time-barred, we will rely on the first set of calculations.)

The defendant uses as the starting date for disability May 11, 1991, the day after the plaintiff's unsuccessful two-week attempt to return to work part-time and thus the date most favorable to the plaintiff because it avoids the earlier date of December 5, 1990, the date listed on the application. Under the policy, the elimination period thus ended on August 9, 1991, 90 days after the onset of disability. According to the defendant, the plaintiff therefore had until November 7, 1992, to file a proof of claim, calculating this deadline by tacking the one-year period allowed under paragraph "b" of section 2 of the "Notice and Proof of Claim" provision onto the 90 days to file a proof of claim after the onset of disability allowed by paragraph "a" of section 2. This November 7, 1992 deadline for filing a proof of claim leads to a deadline of November 7, 1995, for filing a lawsuit, three years after the deadline for filing a proof of claim. Thus, the defendant contends this lawsuit is time-barred because it was

filed on October 4, 1996, about 11 months after the deadline.

We agree with this analysis. It is also significant that the plaintiff had ample time to file a lawsuit despite repeated consideration of his claim by UNUM. The plaintiff was aware on June 17, 1994, that litigation might be necessary since he asked the defendant at that time about the "last date that legal proceedings can be initiated." On or about August 2, 1994, the defendant responded that his claim had been denied, that there were no further administrative proceedings available and that UNUM considered his case closed. This August date was about 15 months before the limitations period would have expired, more than enough time to have consulted a lawyer and filed a lawsuit. *See Toledo v. State Farm Fire & Casualty Co.,* 810 F.Supp. 156 (E.D.Pa.1992) (regardless of the company's conduct, if the insured still had time to file a lawsuit within the contractual limitations period, the claim is barred).

In opposition, the plaintiff makes essentially six arguments. First, the policy provisions relevant to the contractual period of limitations are ambiguous and must be construed against UNUM. When this is done, the plaintiff's suit is timely. Second, the UNUM representatives he spoke with on the phone led him to believe that he could "prove" his "claim" throughout the administrative handling of the claim, thus not triggering the limitations period until the last of his "proofs" was submitted. Third, the contractual period of limitations is tolled either under *Dercoli v. Pennsylvania National Mutual Insurance Co.,* 520 Pa. 471, 554 A.2d 906 (1989), or *Samuels v. Blue Cross of Greater Philadelphia,* 405 Pa.Super. 476, 592 A.2d 1310 (1991). Fourth, the defendant should be estopped from invoking the contractual period of limitations because it continually requested additional information about his condition rather then tell him it was closing its file, thereby lulling him into a false sense of security. Fifth, UNUM did not give him accurate information in its August 2, 1994 letter about the contractual period of limitations and in fact its imprecise

---

**1.** As noted earlier, the elimination period is "a period of consecutive days of disability" during

which there is no coverage, essentially a waiting period before coverage begins.

response was intended to mislead him, a person suffering from "substantial neurocognitive problems." Sixth, the defendant's failure to pay monthly disability benefits is an ongoing breach of the policy which renders suit timely. None of these contentions are convincing for the following reasons.

■ In arguing that the policy is ambiguous, the plaintiff relies on the absence of a policy definition of "proof of claim." He then contends that the phrase "proof of claim" can be interpreted as meaning the "initial" proof of claim and then a "subsequent" proof of claim that deals with continuing disability. The argument is not entirely clear, but the plaintiff is apparently maintaining that his lawsuit is timely because he satisfied the obligation of making an initial proof of claim and that one or more of the letters he sent UNUM contesting its decision that he was not physically disabled was a proof of claim of continuing disability. These subsequent proofs of claim each started new limitations periods, and the suit was timely filed within one of these unspecified periods.

We reject this argument. The policy is not ambiguous for failing to define "proof of claim." Even to state the argument refutes the plaintiff's position because it indicates the plaintiff's correct understanding of what the policy requires: an initial proof of claim and, if this is successful, subsequent proofs of claim to show continuing disability and hence coverage under the policy.

The argument breaks down because the plaintiff understood perfectly well that his claim based on physical disability had been rejected; by letters dated February 27, 1992, and September 4, 1992, he expressed his dissatisfaction with the denial of benefits based on physical disability. Hence, any subsequent letters from the plaintiff seeking coverage on that basis could not have been for a continuing disability because UNUM never agreed that he was physically disabled in the first place.

The policy language as a whole dealing with notice and proof of claim rebuts the plaintiff's argument. The "Notice" provision generally requires written notice within 30 days of disability and that UNUM will then send the insured its claim forms to fill out,

but if it does not do so, the insured can submit "written proof of claim without waiting for the form." The "Proof" provision describes what must be included in a proof of claim: the onset date of disability, the cause of disability, and the seriousness of the disability. Taken together, these provisions clearly indicate what a proof of claim is and that, as UNUM asserts, the application the plaintiff submitted on July 19, 1991, was a proof of claim.

■ The plaintiff's second argument does not assist him either. His factual assertion in his affidavit, attached to the reply to the defendant's motion for summary judgment, that UNUM representatives led him to believe he could "prove" his "claim" throughout the administration of the claim does not support his legal conclusion that every time he submitted evidence in support of the claim, he was submitting a new proof of claim.

■ The plaintiff's third argument, based on tolling, also fails. The plaintiff first cites *Dercoli, supra,* but that case is distinguishable because it is not a limitations case. Instead, *Dercoli* recognized a cause of action against an insurance company for a violation of the duty of good faith and fair dealing when the company advised the insured that she did not have to obtain a lawyer and then failed to tell her of a potential claim against the policy. On this point, the plaintiff also cites *Miller v. Keystone Insurance Co.,* 402 Pa.Super. 213, 586 A.2d 936 (1991), but that case was reversed. *See* 535 Pa. 531, 636 A.2d 1109 (1994). Further, unlike the company in *Dercoli,* UNUM made no affirmative misrepresentations here; it simply processed the claim and denied it.

The plaintiff next cites *Samuels, supra. Samuels* held that a contractual period of limitations is tolled while the insured exhausts the company's internal claims appeal procedure. We reject reliance on *Samuels* in this case for two reasons. First, the plaintiff does not attempt to show how on the facts of the instant case *Samuels* renders his case timely. Second, *Samuels* is distinguishable because it appears from the facts of that case that exhaustion of the appeal procedure put the plaintiff beyond the applicable con-

tractual period of limitations. As we noted above, the plaintiff here had exhausted all of UNUM's appeal procedures well before the limitations period expired.

■ The plaintiff's fourth argument, based on estoppel, is also incorrect. It is true that the limitations provision can be extended or waived when the company leads the insured to believe that the provision will not be enforced, *see Schreiber v. Pennsylvania Lumberman's Mutual Insurance Co.*, 498 Pa. 21, 444 A.2d 647 (1982) (citing *General State Authority, supra); Commonwealth v. Transamerica Insurance Co.*, 462 Pa. 268, 341 A.2d 74 (1975), but UNUM did nothing to justify a waiver.

The plaintiff relies on the course of the parties negotiations, especially UNUM's repeated offers to consider additional evidence. He maintains that:

> Had Defendant not continually advised Plaintiff that they would be happy to review additional evidence from him, but rather had the Defendant advised Plaintiff that it would consider no more evidence and was closing its file, Plaintiff would not have been lulled into a false sense of security that his claim was still viable.

(Plaintiff's opposition brief at p. 12)

We reject this interpretation of the facts. On several occasions, such as on July 27, 1993, and August 31, 1993, UNUM did advise the plaintiff that it would be willing to examine additional evidence of physical disability, but, contrary to plaintiff's position, the defendant did subsequently do what he insists should have been done; it told him that it was denying the claim and closing his file.

On October 20, 1993, the defendant wrote the plaintiff informing him that it was denying any liability, closing his file, and that, in the absence of an appeal, its decision would be final. On February 17, 1994, UNUM not only denied the appeal of the October 20 decision, but was silent on whether it would accept additional evidence.

In any event, the next exchange of letters is fatal to the plaintiff's claim that the defendant lulled him into believing that the limitations clause would not be enforced. On June 17, 1994, some five months after the denial of his appeal, the plaintiff wrote the defendant, inquiring about the deadline for taking legal action. On August 2, 1994, the defendant, while again stating that it would consider "supplemental information," responded that suit had to be filed within three years of the deadline for filing a proof of claim and that:

> Our position regarding your disability claim ... is outlined in our letter of February 17, 1994 ... Your claim has been closed and we will not continue our investigation of your condition at this time.

(Plaintiff's original complaint, exhibit M; defendant's exhibit J).

The plaintiff's letter shows his awareness on June 17, 1994, despite the prior UNUM statements that additional evidence would be considered, that litigation might be necessary, thus showing that he had not been lulled into believing that his claim would be considered indefinitely. UNUM's letter shows not only that it considered the plaintiff's claim closed but that it would enforce the contractual period of limitations. In the face of the latter statement, its expression at the same time of a willingness to entertain additional evidence cannot act as a waiver or estoppel. See *FDIC v. Hartford Accident & Indemnity Co.*, 97 F.3d 1148, 1152 (8th Cir. 1996) (rejecting waiver or estoppel arguments based on the company's willingness, expressed in its notices of denial, to consider additional information because "these comments were simply good faith expressions of a willingness to consider corrected information if necessary") (citing *Roberson v. Metropolitan Life Insurance Co.*, 682 F.Supp. 907 (E.D.Mich.1988)).

Our conclusion is in accord with Pennsylvania law in this area (although we do not intend by citing the following cases to indicate that their fact patterns are necessary for a waiver). Pennsylvania courts have held that a contractual limitation clause has been waived or extended when the company has, during the limitations period, either conceded liability, *see Baker v. Pennsylvania National Mutual Casualty Insurance Co.*, 370 Pa.Super. 461, 536 A.2d 1357 (1988), *aff'd*, 522 Pa. 80, 559 A.2d 914 (1989) (equally divided court), or processed the claim without indi-

cating that coverage would be denied, *Transamerica Insurance supra,* and then invoked the limitations clause after the limitations period had expired. In the instant case, on the other hand, UNUM consistently denied coverage for plaintiff's physical-disability claim, beginning with its first assessment of the claim on February 18, 1992.

Moreover, the plaintiff's conduct subsequent to the August 2, 1994 letter also indicates the limitations clause is enforceable. Even though UNUM had responded in that letter to his inquiry about the deadline for filing suit by pointing out the contract language, the plaintiff waited about a year and five months after receipt of the letter to make another attempt to obtain coverage, well beyond the deadline for filing suit. This attempt was not even a lawsuit but the January 3, 1996 letter from Dr. Lankford, requesting that UNUM consider reopening his claim.

The plaintiff's fifth argument is that the August 2, 1994 response to his inquiry about the filing deadline is evidence of UNUM's duplicity because UNUM did not give specific deadlines, as it did in this litigation, but gave a vague reference to the policy language. The plaintiff contends that this response, in connection with UNUM's offer in the same letter to consider additional evidence, was a deliberate attempt to mislead an insured suffering from "substantial neurocognitive problems." (Plaintiff's affidavit, ¶ 10). In support of his medical condition, the plaintiff has attached medical exhibits to his reply to the defendant's motion for summary judgment.

Looking at the medical exhibits, we find no evidence of a neurocognitive problem that would have prevented the plaintiff from understanding UNUM's letters. In fact, we find evidence in the exhibits to the contrary. (Exhibit D at p. 3). We also note that the plaintiff did not specify which portions of the exhibits support his contention.

Turning to UNUM's response on the contractual period of limitations, we see no inaccuracy or attempt to deceive. The response accurately reflected the policy language. In this regard, as the plaintiff concedes, under Pennsylvania law UNUM had no duty to advise its insured on the effects of policy language. See *Kilmore v. Erie Insurance Co.,* 407 Pa.Super. 245, 595 A.2d 623 (1991).

■ The plaintiff's final argument, invoking the continuing-violation theory, is that the defendant's failure to pay monthly disability benefits is an ongoing breach of the insurance contract which renders suit timely. We disagree. As the defendant points out, the Pennsylvania Commonwealth Court rejected a similar contention in *Casner v. American Federation of State, County,* and *Municipal Employees,* 658 A.2d 865 (1995). In *Casner,* eight workers sued their union, seeking to compel it to arbitrate their claims that it had breached its duty of fair representation. In response to the union's argument that the suit was time-barred, the plaintiffs contended that the limitations period began anew each time they received a pay check with smaller pay and benefits. Rejecting this argument, the commonwealth court stated:

> Petitioners contend that AFSCME committed a continuing violation and that their causes of action are ongoing, recommencing with each pay period because Petitioners sustain losses of pay and benefits with each pay check. We find this position unpersuasive. Adopting this rationale would effectively render the limitation period for any cause of action alleging loss of payment meaningless when the payment is received on a regular basis. "[T]he purpose of a statute of limitations is to bar stale claims and avoid problems of proof arising from stale memories." *Garcia v. Community Legal Services Corp.,* 362 Pa. Superior Ct. 484, 493, 524 A.2d 980, 984 (1987) appeal denied, 517 Pa. 623, 538 A.2d 876 (1988). Accepting Petitioners' continuing violation theory would hinder and frustrate the ultimate aim of limitations periods. We hold that Petitioners' causes of action are not continuing.

*Id.,* 658 A.2d at 871.

Although *Casner* dealt with payments actually being made periodically, rather than the failure to make payments, its reasoning is equally applicable here. We therefore re-

ject the plaintiff's attempt to keep his case alive under the continuing-violation theory.