PRIME MEDICA ASSOCIATES,
Appellee

v.

VALLEY FORGE INSURANCE COM-
PANY, t/a d/b/a and/or a/k/a Continen-
tal Casualty Company and/or CNA,
Appellant.

Prime Medica Associates, Appellant

v.

Valley Forge Insurance Company, t/a
d/b/a and/or a/k/a Continental Casual-
ty Company and/or CNA, Appellee.

Superior Court of Pennsylvania.

Argued Jan. 8, 2008.
Filed March 5, 2009.

Ronald P. Schiller, Philadelphia, for Valley Forge.

Raymond Quaglia, Philadelphia, for Prime Medica.

BEFORE: KLEIN, GANTMAN, AND KELLY, JJ.

OPINION BY GANTMAN, J.:

¶ 1 The parties, Valley Forge Insurance Company, t/a d/b/a and/or a/k/a Continental Casualty Company and/or CNA ("Insurer") and Prime Medica Associates[1] ("Insured"), appeal and cross-appeal from the judgment entered in the Philadelphia County Court of Common Pleas in favor of Insured in this breach of contract action. We reverse and remand with instructions.

¶ 2 The trial court opinion sets forth the relevant facts of this appeal as follows:

[Insured] purchased an office building at 207 North Broad Street in Philadelphia in 1974. In September 1984, [Insured] entered into a lease agreement with Medic. Medic occupied four and a half floors of the building and used the space as a diagnostic imaging center. Medic made significant structural changes to the office space in order to accommodate its imagining equipment, which included a CT scanner and an MRI unit. The MRI unit was surrounded by three-inch thick steel walls, and there were lead-lined walls surrounding the CT scanner. [Doctor Lorenzo] testified that he spent $1.4 million to renovate the office building to accommodate this equipment. Upon termination of the lease with [Insured], Medic had the option of either leaving the equipment in operating order, or replacing it with like kind. Alternatively, if Medic chose to remove the equipment, it had to restore the space to its original condition. In November 1998, Tenet Healthcare Systems took over the lease from Medic.

In 1999, [Insured] became insured by [Insurer]. In November 2000, Tenet notified [Insured] that they intended to terminate the lease on March 30, 2001. On March 15, 2001, Doctor Lorenzo ... testified that he went into the space occupied by Tenet and discovered that Tenet had abandoned the property. Tenet had removed some of the medical equipment but failed to remove the MRI unit and the CT scanner. [Doctor Lorenzo] testified that the space was left in shambles. On April 16, 2001 [Insured's] building was vandalized and additional medical equipment was taken. [Insured] was told by Joel Fagerstrom, chief operating officer of Hahnemann University Hospital, that Tenet's service company, Biomagnetics, was responsible for removing this equipment. [Insured] did not report this incident to the police. Tenet ceased paying rent on April 1, 2001. [Insured] was unsuccessful in his attempts to re-lease the space vacated by Tenet. [Insured] filed suit against Tenet on September 15, 2001 for damages arising from the removal of the medical equipment, the subsequent vandalism of the property, and for interruption of rentability. In the meantime, [Insured] had become unable to maintain [its] mortgage payments for the building. The property was foreclosed upon and went to sheriff's sale on November 12, 2002 where it sold for $1.8 million. During the foreclosure proceedings, [Insured] was represented by George Milner. Milner formally advised [Insurer] of the claim for damages on May 22, 2002, a little more than one year from the date of [Insured's] loss.

---

1. Prime Medica Associates is a limited partnership operated by Dr. John Lorenzo, D.D.S. and his wife, Diane.

On May 30, 2003, the jury in the Tenet litigation awarded [Insured] damages for business interruption and for cleanup and removal of the medical imagining equipment. However, the amount awarded by that jury was well short of the amount necessary to cover [Insured's] losses. As a result, [Insured] instituted the instant litigation.[2]

2. In addition to the damage resulting from the removal of the medical equipment, [Insured] became aware of water damage to the building. On April 27, 2001, [Insured] filed a notice of property loss with his insurance broker, and was subsequently contacted by James White, an insurance adjustor. Mr. White met [Insured] on May 8, 2001, and toured and photographed the space vacated by Tenet. Ultimately, there were three water damage claims filed with the insurance company due to a water main break, a leak from the parking lot, and a leak from the roof of the building. The damages claims for the water main break and for the leak from the parking lot were denied.

As noted, [Insured] submitted the claims for damages through Mr. Milner. The claims were investigated and ultimately, [Insurer] denied coverage on November 5, 2003.

(Trial Court Opinion, entered April 26, 2007, at 2–3).

¶3 On November 4, 2004, Insured filed a *praecipe* to issue a writ of summons. Insured filed a *praecipe* to reissue the writ of summons on January 27, 2005. On March 17, 2005, Insurer filed a *praecipe* and rule upon Insured to file a complaint within twenty days. Insured filed the instant complaint on April 4, 2005. Insured claimed Insurer had breached the policy by failing to cover the casualty losses stemming from Tenet's departure and the April 16, 2001 acts of vandalism. Insured further complained Insurer had acted in bad faith by denying Insured's claim. Insured summarized its unreimbursed losses as follows:

a) The unreimbursed loss of the use, enjoyment and rental value from [its] building;

b) The unreimbursed loss of the value of the equipment attached to the building in an amount in excess of $2,000,000.00;

c) The unreimbursed loss of the value of [its] building at 207 N. Broad Street, Philadelphia, PA in an amount in excess of $2,000,000.00.

(Complaint, filed 4/4/05, at 4). Insured demanded judgment in its favor in an amount in excess of $50,000.00 for breach of contract, consequential, and bad faith damages.[2]

¶4 On September 9, 2005, Insurer filed an answer with new matter.[3] In its new matter, Insurer argued "some or all of the property for which [Insured] seeks coverage is not Covered Property under the policy." (Answer with New Matter, filed 9/9/05, at 7). Further, Insurer claimed: 1) Insured failed to give Insurer prompt notice of the loss; 2) Insured did not take all reasonable steps to protect the property from further damage; and 3) Insured com-

2. Insured's complaint named one defendant: Continental Casualty Company t/a CNA Insurance Company ["CNA"]. CNA filed preliminary objections, which the court overruled on May 19, 2005. On June 10, 2005, CNA filed an answer with new matter, claiming Valley Forge Insurance Company ["VFIC"] had issued the Insured's policy. On July 20, 2005, CNA filed a motion for judgment on the pleadings, due to Insured's failure to sue the proper party. On July 27, 2005, Insured filed a motion to amend the caption of the com-

plaint to add VFIC as a defendant. By order entered on September 1, 2005, the court granted Insured's motion to amend the caption. In a separate order also entered on September 1, 2005, the court denied Insurer's motion for judgment on the pleadings.

3. Specifically, this filing is styled as: "Answer with New Matter of Defendant, Valley Forge Insurance Company, to Plaintiff's Complaint."

menced its action more than two years after the last direct physical loss, in contravention of the policy's "suit limitation" clause. On September 13, 2005, Insured filed its reply to Insurer's new matter, raising the defenses of waiver and estoppel.

¶ 5 On July 10, 2006, Insurer filed a motion *in limine* to preclude Insured from offering Mr. Daniel Connell as an expert in the valuation of medical imaging equipment. The court subsequently denied this motion. On July 12, 2006, Insurer filed a motion *in limine* to preclude Insured from offering Mr. Anthony Falcone as an expert in real estate valuation. The court granted this motion in part, limiting Mr. Falcone's testimony to the relevant time frame. On July 14, 2006, Insurer filed a motion *in limine* to preclude any evidence of bad faith from reaching the jury, which the court granted. Also on July 14, 2006, Insurer filed a motion *in limine* to preclude Insured from offering Attorney Milner as an expert on the issue of bad faith. The court granted this motion in part, ordering as follows:

Mr. Miller may testify to the issue of coverage. He may not testify as to alleged bad faith. This is to be determined in a bench trial after coverage is found by the jury. If the jury does not find coverage there will be no bad faith determination necessary.

(Order, entered 7/25/06, at 1).

¶ 6 On August 2, 2006, the jury found Insurer breached the policy by refusing to pay Insured's casualty loss. Further, the jury determined Insurer had breached the policy by refusing to pay for Insured's vandalism claim. The jury awarded $1,500,000.00 to Insured for the casualty loss, plus $2,500,000.00 for the vandalism claim.

■ ¶ 7 Insurer timely filed its post-trial motions on Monday, August 14, 2006.[4] Insurer argued it was entitled to a new trial on the following bases: 1) Insured presented evidence of bad faith, despite the court's pretrial ruling; 2) the jury's verdict regarding the casualty loss and vandalism claim was against the weight of the evidence; 3) Mr. Milner and Mr. Connell provided improper testimony; and 4) the court should have given Insurer's proposed jury charge. Insurer also claimed it was entitled to judgment notwithstanding the verdict. In the alternative, Insurer asked the court to grant *remittitur* and mold the verdict.

¶ 8 Insured timely filed its post-trial motion on August 23, 2006.[5] Specifically, Insured demanded an award of pre-judgment interest:

[Insured] requests the [c]ourt as verdict winner to increase to $5,352,902.31 the $4,000,000.00 verdict entered in this matter so as to include pre-judgment interest at six percent (6%) compounded annually from the date of the loss in April 2001.

(Post-trial Motion, filed 8/23/06, at 1).

¶ 9 Thereafter, the parties proceeded to the bench trial for Insured's bad faith claim. On October 18, 2006, the court found in favor of Insurer. That same day, the court denied Insured's post-trial motion seeking prejudgment interest. The court also denied Insurer's requests for a

---

4. Post-trial motions shall be filed within ten days after the verdict. Pa.R.C.P. 227.1(c)(1). Here, Insurer's post-trial motions were technically due on August 12, 2006. However, August 12, 2006 was a Saturday. Thus, Insurer timely filed its post-trial motions on Monday, August 14, 2006.

5. Rule 227.1(c) further provides: "If a party has filed a timely post-trial motion, any other party may file a post-trial motion within ten days after the filing of the first post-trial motion."

new trial and judgment notwithstanding the verdict. The court, however, granted Insurer's post-trial motion, to the extent Insurer sought *remittitur*. Specifically, the court found the jury's damage award of $4,000,000.00 was highly speculative. Thus, the court limited Insured's damages to $2,049,000.00, an amount representing the policy limits less a $1,000.00 deductible.

■ ¶ 10 Insurer timely filed its notice of appeal on November 10, 2006. That same day, Insurer filed a *supersedeas* bond in the amount of $2,460,000.00. On November 15, 2006, Insured timely filed its notice of cross-appeal. The court did not order the parties to file concise statements of matters complained of on appeal, pursuant to Pa.R.A.P. 1925(b). On December 27, 2006, Insurer filed a *praecipe* to enter judgment on the verdict.[6]

¶ 11 In its appeal, docketed at No. 3279 EDA 2006, Insurer raises eight issues for our review:

DID THE TRIAL COURT ERR BY FAILING TO RULE AS A MATTER OF LAW THAT THE INSURED FAILED TO INSTITUTE SUIT AGAINST ITS INSURER WITHIN TWO YEARS FROM THE DATE OF LOSS AS REQUIRED BY THE POLICY?

DID THE TRIAL COURT ERR BY PERMITTING CONSEQUENTIAL DAMAGES IN THIS FIRST–PARTY INSURANCE BREACH OF CONTRACT CLAIM IN VIOLATION OF PENNSYLVANIA LAW AND THE INSURANCE CONTRACT, THUS REQUIRING A FURTHER *REMITTITUR* OF THE VERDICT TO AT MOST $1.1 MILLION?

ALTERNATIVELY, WAS IT PROPER FOR THE TRIAL COURT TO REMIT THE JURY'S VERDICT TO $2,049,000?

WAS IT PROPER FOR THE TRIAL COURT TO DENY PREJUDGMENT INTEREST?

DID THE TRIAL COURT ERR BY FAILING TO GRANT THE INSURER'S MOTION FOR A NEW TRIAL BECAUSE THE INSURED IMPERMISSIBLY ELICITED TESTIMONY AND MADE ARGUMENTS REGARDING THE INSURER'S ALLEGED BAD FAITH BEFORE THE JURY, BECAUSE THE INSURED'S VALUATION EXPERT WAS IMPROPERLY PERMITTED TO TESTIFY AS TO MATTERS WITHOUT A PROPER FOUNDATION OR BASIS TO DO SO, AND/OR BECAUSE THE DAMAGES AWARDED BY THE JURY WERE AGAINST THE CLEAR WEIGHT OF THE EVIDENCE?

---

6. In their notices of appeal and cross-appeal, the parties purport to appeal and cross-appeal from the trial court's denial of their post-trial motions. Such orders are interlocutory and generally not appealable. *Brown v. Philadelphia College of Osteopathic Medicine*, 760 A.2d 863, 865 (Pa.Super.2000), *appeal denied*, 566 Pa. 632, 781 A.2d 137 (2001). Rather, the subsequent judgment is appealable. *Id.* A final judgment entered during the pendency of an appeal is sufficient to perfect appellate jurisdiction. *Drum v. Shaull Equipment and Supply Co.*, 787 A.2d 1050 (Pa.Super.2001), *appeal denied*, 569 Pa. 693, 803 A.2d 735

(2002). In the present action, Insurer filed its notice of appeal on November 10, 2006. Insured filed its notice of cross-appeal on November 15, 2006. However, judgment on the verdict was not entered until December 27, 2006. Thus, the parties' notices of appeal and cross-appeal relate forward to December 27, 2006, the date judgment was entered and copies of the judgment were distributed to all the appropriate parties. *See* Pa.R.A.P. 905(a) (stating notice of appeal filed after court's determination but before entry of appealable order shall be treated as filed after such entry and on date of entry).

DID THE TRIAL COURT ERR BY FAILING TO RULE AS A MATTER OF LAW THAT THE INSURED'S CLAIMS ARE BARRED BASED UPON ITS FAILURE TO MITIGATE ITS DAMAGES AND OTHERWISE COMPLY WITH THE CONDITIONS PRECEDENT TO COVERAGE UNDER THE POLICY?

DID THE TRIAL COURT ERR BY FAILING TO RULE AS A MATTER OF LAW THAT THE INSURED'S CLAIMS ARE BARRED BASED UPON ITS FAILURE TO MITIGATE ITS DAMAGES AND OTHERWISE COMPLY WITH THE CONDITIONS PRECEDENT TO COVERAGE UNDER THE POLICY?

DID THE TRIAL COURT ERR BY FAILING TO RULE AS A MATTER OF LAW THAT ALL OR PART OF THE INSURED'S LOSS DID NOT RESULT FROM "PHYSICAL LOSS" OR "DAMAGE TO COVERED PROPERTY" AS REQUIRED BY THE POLICY?

DID THE TRIAL COURT ERR BY FAILING TO RULE THAT ALL OR PART OF THE INSURED'S CLAIMS ARE BARRED BY THE DOCTRINE OF COLLATERAL ESTOPPEL?

(Insurer's Brief at 3).

¶ 12 In its first issue, Insurer asserts the policy contained a suit limitation clause, requiring Insured to bring any legal action against Insurer within two years after the date on which the loss or damage occurred. Insurer contends Insured violated the suit limitation clause by commencing the instant action on November 4, 2004, more than three years after the casualty and vandalism losses. Insurer acknowledges the suit limitation clause can be tolled where an insurer induces an insured

to forbear bringing suit within the prescribed period. Nevertheless, Insurer claims the evidence adduced at trial failed to establish any inducement. Insurer concludes the trial court erred by failing to bar Insured's claim on the basis of the suit limitation clause.

¶ 13 In response, Insured maintains Insurer induced Insured to refrain from suing while Insurer investigated the claim. Insured asserts Mr. Nicholas Bosovich, Insurer's claim representative, testified at a deposition in Insured's related litigation against Tenet. Insured avers Mr. Bosovich had a duty at the deposition to raise the running of the limitations period or be estopped from raising the limitations provision in the policy. Insured claims it relied on Mr. Bosovich's silence in its forbearance to bring suit within the limitations period.

¶ 14 Insured contends Insurer's coverage denial letter did not reference the limitations clause when it gave its reason for coverage denial. Insured submits Insurer therefore waived the limitations provision as a defense to Insured's suit, because the policy required the Insurer to give its reasons for denying coverage. Insured concludes Insurer waived the limitations provision and/or is estopped from enforcing that provision. We disagree.

■ ¶ 15 Statutes of limitations begin to run as soon as the right to institute and maintain a suit arises. *Fine v. Checcio*, 582 Pa. 253, 870 A.2d 850 (2005). "Once the prescribed statutory period has expired, the party is barred from bringing suit unless it is established that an exception to the general rule applies which acts to toll the running of the statute." *Caro v. Glah*, 867 A.2d 531, 533–34 (Pa.Super.2004).

Statutes of limitations are vital to the welfare of society and are favored in the law. They are found and approved in all systems of enlightened jurisprudence. They promote repose by giving security and stability to human affairs. An important public policy lies at their foundation. They stimulate to activity and punish negligence. While time is constantly destroying the evidence of rights, they supply its place by a presumption which renders proof unnecessary. Mere delay, extended to the limit prescribed, is itself a conclusive bar. The bane and antidote go together.

*Devine v. Hutt,* 863 A.2d 1160, 1166 (Pa.Super.2004) (quoting *Gravinese v. Johns–Manville Corp.,* 324 Pa.Super. 432, 471 A.2d 1233, 1237 (1984) (internal citations omitted)).

■■■■ ¶ 16 Pennsylvania law recognizes as valid suit limitation clauses in insurance policies. *General State Authority v. Planet Ins. Co.,* 464 Pa. 162, 346 A.2d 265 (1975) (holding policy provision setting twelve-month time limit on commencing suits to recover under insurance policy is valid and sustainable); *World of Tires, Inc. v. American Insurance Co.,* 360 Pa.Super. 514, 520 A.2d 1388 (1987), *appeal denied,* 516 Pa. 623, 532 A.2d 20 (1987) (holding twelve-month time limit set forth in insurance policy is applicable, absent actions by insurer which led insured to believe that provision will not be enforced); *Petraglia v. American Motorists Ins. Co.,* 284 Pa.Super. 1, 424 A.2d 1360 (1981), *affirmed by,* 498 Pa. 32, 444 A.2d 653 (1982) (holding one-year limitation on actions arising under insurance policy is valid and enforceable); *Satchell v. Insurance Placement Facility of Pennsylvania,* 241 Pa.Super. 287, 361 A.2d 375 (1976) (holding insured not entitled to recovery

where suit was brought after expiration of twelve-month limitations period). Suit limitation clauses in insurance policies are not imposed by statute; they are contractual undertakings between the parties to limit the time for bringing suit on the contract. *General State Authority, supra* at 166, 346 A.2d at 267. An insurer is not required to show prejudice when seeking enforcement of a suit limitation provision. *Petraglia, supra.*

■■■■ ¶ 17 Even when properly pled, a suit limitation clause can be subject to the defenses of waiver and estoppel. Pa. R.C.P. 1029(b). The affirmative defense of a suit limitation clause is properly raised in new matter. *Farinacci v. Beaver County Indus. Development Authority,* 510 Pa. 589, 511 A.2d 757 (1986); Pa.R.C.P. 1028; 1030.

A party waives all defenses and objections which are not presented either by preliminary objection, answer or reply, except a defense which is not required to be pleaded under Rule 1030(b), the defense of failure to state a claim upon which relief can be granted, the defense of failure to join an indispensable party, the objection of failure to state a legal defense to a claim and any other non-waiveable defense or objection. Pa. R.C.P. 1032(a). Defenses to the statute of limitations, such as estoppel, agreement, agency, apparent authority, fraud, or concealment are waiveable defenses and must be raised in a reply to new matter asserting the statute of limitations as an affirmative defense. *Id.*

*Devine, supra* at 1168–69.

■■■■ ¶ 18 Waiver is the voluntary and intentional abandonment or relinquishment of a known right. *Samuel J. Marranca General Contracting Co., Inc. v.*

*Amerimar Cherry Hill Associates Ltd. Partnership,* 416 Pa.Super. 45, 610 A.2d 499 (1992). "Waiver may be established by a party's express declaration or by a party's undisputed acts or language so inconsistent with a purpose to stand on the contract provisions as to leave no opportunity for a reasonable inference to the contrary." *Id.* at 501.

¶ 19 A suit limitation clause is also subject to the defense of estoppel. *Petraglia, supra.*

> Equitable estoppel is a doctrine that prevents one from doing an act differently than the manner in which another was induced by word or deed to expect. A doctrine sounding in equity, equitable estoppel recognizes that an informal promise implied by one's words, deeds or representations which leads another to rely justifiably thereon to his own injury or detriment may be enforced in equity.

*Kreutzer v. Monterey County Herald Co.,* 560 Pa. 600, 606, 747 A.2d 358, 361 (2000) (quoting *Novelty Knitting Mills v. Siskind,* 500 Pa. 432, 435, 457 A.2d 502, 503 (1983)). The party asserting estoppel bears the burden of establishing estoppel by clear, precise and unequivocal evidence. *Farmers Trust Co. v. Bomberger,* 362 Pa.Super. 92, 523 A.2d 790 (1987). "[M]ere silence or inaction is not a ground for estoppel unless there is a duty to speak or act." *Id.* at 793 (quoting *Brown v. Haight,* 435 Pa. 12, 19, 255 A.2d 508, 512 (1969)).

¶ 20 The insured must establish a factual basis to assert the defense of waiver or estoppel. *General State Authority, supra; Lardas v. Underwriters Ins. Co.,* 426 Pa. 47, 231 A.2d 740 (1967) (holding no waiver or estoppel where insurer did not mislead insured about possibility of settlement or persuade insured to refrain from commencing suit); *Kramer v. State Farm Fire and Cas. Ins. Co.,* 412 Pa.Super. 227, 603 A.2d 192 (1992) (holding insurer's assertions regarding its refusal to pay under insurance policy was not fraudulent communication or form of duress which forced insured to forbear bringing suit); *World of Tires, supra* (holding insurer's offer of settlement did not indicate waiver of suit limitations clause); *Petraglia, supra* (holding insured failed to present factual basis for waiver or estoppel despite silence of insurer as to suit limitation). *Compare Samuels v. Blue Cross of Greater Philadelphia,* 405 Pa.Super. 476, 592 A.2d 1310 (1991), *appeal denied,* 529 Pa. 658, 604 A.2d 250 (holding where insurer provides benefits and later retracts payment, limitations period is tolled until date of retraction). The insured must present evidence establishing "reasonable grounds for believing that the time limit would be extended" or that the insurer would not strictly enforce the suit limitation provision. *Petraglia, supra* (quoting *McMeekin v. Prudential Ins. Co. of America,* 348 Pa. 568, 572, 36 A.2d 430, 432 (1944)).

¶ 21 Instantly, Insurer raised the suit limitation provision *via* new matter in its answer to Insured's complaint. Insured replied to Insurer's new matter, asserting the defenses of waiver and/or estoppel. Hence, the parties' affirmative defenses were properly preserved. *See* Pa.R.C.P. 1032(a). The casualty and vandalism losses occurred on March 25, 2001 and April 16, 2001. Insured did not institute the instant action against Insurer until November 4, 2004, more than three years after the last casualty and vandalism losses occurred. The instant action, therefore, was commenced outside the

contractual limitations period set forth in the insurance policy.

**** ¶ 22 Insured failed to show any actions by Insurer which induced Insured to conclude Insurer would waive the limitations period. *See World of Tires, supra.* Insurer sent Insured four separate letters within the limitations period, referencing in each letter the importance and all the requirements of the limitations provision in the policy. Insured failed to request any relief from or extension of the limitations period. In the absence of evidence constituting Insurer's waiver, the suit limitations clause prevails. *Id.*

**** ¶ 23 Furthermore, Insured failed to demonstrate that Insurer should be estopped from asserting the suit limitations provision. The record does not indicate Insurer misled Insured about the possibility of settlement or induced Insured in any manner to refrain from commencing suit. *See Lardas, supra; Kramer, supra.* The mere declaration that Insurer was investigating the claim is insufficient to prove Insured was induced to forbear from commencing suit. *See World of Tires, supra; Lardas supra.* Mr. Bosovich's failure to mention the suit limitations provision at his deposition in a related matter is insufficient to provide grounds for estoppel. *See Farmers Trust Co., supra.* Likewise, Insurer's letter to Insured denying coverage specified Insurer's reasons for the decision, in addition to the general terms, exclusions and limitations of the policy. Therefore, Insurer gave no formal or informal promise implied by its words, deeds or representations which led Insured to justifiable reliance or forbearance to its own injury or detriment. *See Kreutzer, supra.* Thus, we conclude Insured's failure to commence suit within the policy limitations period barred its claim against Insurer.

¶ 24 In its cross-appeal, docketed at No. 3331 EDA 2006, Insured raises two issues for our review:

> DID THE COURT USURP THE FUNCTION OF THE JURY IN REMITTING THE FOUR MILLION DOLLAR VERDICT TO TWO MILLION DOLLARS FOR NO REASON OTHER THAN THAT THE VERDICT EXCEEDED THE THREE MILLION DOLLARS IN DAMAGES THE COURT DEEMED IN EVIDENCE AND REQUESTED BY [INSURED'S] COUNSEL IN HIS CLOSING TO THE JURY?

> DID THE COURT ERR IN REFUSING TO ADD PREJUDGMENT INTEREST IN THIS CONTRACT CASE AT LEAST ON THE REMITTED VERDICT OF TWO MILLION DOLLARS, THE SINGLE OCCURRENCE POLICY LIMITS, SINCE ALL CRITERIA ARE MET TO ADD INTEREST AS A MATTER OF RIGHT?

(Insured's Brief at 3). Due to our disposition of Insurer's appeal, we need not address any of the other issues raised in the appeal or cross-appeal. Accordingly, we reverse and remand with instructions.

¶ 25 Judgment reversed; case remanded for entry of judgment in favor of Insurer. Jurisdiction is relinquished.