J-A21024-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DANIELLE ROSBOROUGH AND RYAN BATEMAN | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : | |
| v. | : | |
| CARMEL DEVELOPMENTS, INC. | : | No. 253 EDA 2022 |

Appeal from the Judgment Entered March 8, 2022
In the Court of Common Pleas of Philadelphia County
Civil Division at No: 190201917

| | | |
|---|---|---|
| DANIELLE ROSBOROUGH AND RYAN BATEMAN | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| CARMEL DEVELOPMENTS, INC. | : | No. 418 EDA 2022 |
| Appellant | : | |

Appeal from the Judgment Entered March 8, 2022
In the Court of Common Pleas of Philadelphia County
Civil Division at No: 190201917

BEFORE: LAZARUS, J., MURRAY, J., and McCAFFERY, J.

MEMORANDUM BY MURRAY, J.: **FILED OCTOBER 7, 2022**

Danielle Rosborough and Ryan Bateman (Appellants) appeal from the judgment awarding them nominal damages in their ejectment action against Carmel Developments, Inc. (Carmel). Carmel cross-appeals from the judgment, which found Appellants owned a portion of Carmel's property by

means of the consentable boundary line doctrine (recognition and acquiescence).[1] Appellants have filed a motion to quash Carmel's cross-appeal as untimely filed. Motion to Quash Cross-Appeal, 2/16/22, ¶¶ 12-16. Carmel has filed a motion to quash Appellants' appeal, averring lack of service of Appellants' notice of appeal. Motion to Quash, 2/22/22, ¶¶ 3, 15-16. Upon careful review, we deny the parties' respective motions to quash, and affirm the trial court's judgment.

The trial court summarized the facts underlying this appeal as follows:

The parties contested the ownership of a portion of the backyard used by the residents of 236 Fairmount Avenue, that occupied land deeded and belonging to 628 N. Bodine Street in Philadelphia, Pennsylvania. In 2018-2019, [Carmel] demolished the existing house of 628 N. Bodine and erected a larger building up to the limit of the meets and bounds in its deed. [Appellants] contended that Carmel's new building encroached upon part of the backyard of 236 Fairmount[,] which they owned by virtue of recognition and acquiescence.

The properties at issue - 628 N. Bodine Street and 236 Fairmount Avenue – are adjacent to each other. The southernmost portion of the backyard of 236 Fairmount abuts a portion of the northern side wall of the new building at 628 N. Bodine. The backyard "was not particularly large." The distance from the back of [Appellants'] house to the north side wall of the original house at 628 N. Bodine was about five to five and a half feet.

The backyard of 236 Fairmount has always been fully enclosed. The north side of the backyard is [Appellants'] house.

---

[1] "Based upon a rule of repose sometimes known as the doctrine of consentable line, the existence of such a boundary may be proved either by dispute and compromise between the parties or recognition and acquiescence by one party of the right and title of the other." *Moore v. Moore*, 921 A.2d 1, 4 (Pa. Super. 2007).

The backyard has a fence running along its east side. **The south side of the backyard was at first the north wall of the former house at 628 N. Bodine and later the north wall of Carmel's new building, which was alleged to have encroached upon the backyard owned by [Appellants].** The west side of the backyard is a brick wall painted blue, that separates 236 Fairmount from the backyard of the house at 238 Fairmount.

Trial Court Opinion, 12/13/21, at 1-2 (emphasis added).

On February 19, 2019, Appellants filed a complaint in ejectment claiming ownership of a portion of the 628 North Bodine Street property, by application of the consentable lines doctrine (recognition and acquiescence). On February 21, 2019, Appellants filed a petition for a preliminary injunction. Appellants claimed:

From at least 1996 until about December 28, 2018, the respected division as a boundary line between the properties was along the northernmost wall of 628 North Bodine Street, north of which wall was [Appellants'] rear yard, an open piece of ground with poured concrete on the land and bounded on all sides with fencing and/or walls that completely enclosed the rear yard.

Petition for Preliminary Injunction, 2/21/19, at 3, ¶ 4. Appellants asserted that Carmel,

trespassed upon their real property by encroaching with construction activities that included digging out the land in [Appellants'] rear yard and laying a foundation for a wall, and damaging and partly destroying a fence and a wall that are wholly upon [Appellants'] property, without permission and in violation of [Appellants'] fee simple ownership.

*Id.* at 3, ¶ 5. Further, Appellants claimed irreparable harm would result if Carmel continued construction on Appellants' property. *Id.* at 3, ¶ 7. On April 23, 2019, following a hearing, the trial court denied Appellants' petition for a

preliminary injunction. Trial Court Order, 4/8/19. Appellants did not appeal this order.

On May 20, 2019, Appellants filed an amended complaint in ejectment averring Carmel's construction trespassed upon Appellants' property. Amended Complaint, 5/20/19, at 3-4, ¶ 11. Appellants described the southern boundary of their property at 236 Fairmont Avenue, upon which Carmel encroached, as follows:

> The south side of the rear yard of 236 Fairmount Avenue was the northernmost wall of the house at 628 N. Bodine Street, which formed a continuous, straight wall that ran westward from N. Bodine Street for approximately 15 feet. The wall that was the boundary between the backyard of 236 Fairmount Avenue and 628 N. Bodine Street was unbroken, and there were no points of access from 628 N. Bodine Street into the backyard at 236 Fairmount Avenue, whether through the wall or in any other way.

*Id.* at 4-5, ¶ 14(c). According to their Amended Complaint, Appellants and their predecessors, and Carmel and its predecessors, recognized and acquiesced to this wall as the boundary line between the properties. *Id.* at 5-6, ¶¶ 15-20.

Carmel filed an answer to Appellants' amended complaint denying encroachment, and asserting "the referenced wall has never served as a boundary line." *See* Answer and New Matter, 5/31/19, ¶¶ 9, 15. Carmel further denied

> that it recognized or acknowledged that the boundary line was the pre-existing wall. To the contrary, [Carmel] stated that it would abide by the boundary line as set forth in the parties' respective deeds.

*Id.* ¶ 18. In a new matter, Carmel claimed it is a *bona fide* purchaser of the North Bodine Street property, and it agreed to accept only the boundary lines described in the parties' respective deeds. *Id.* ¶¶ 30-37.

The matter proceeded to a nonjury trial on November 30, 2020, after which the parties submitted proposed findings of fact and conclusions of law. On June 28, 2021, the trial court entered its decision (a) finding in favor of Appellants on their claim of a consentable boundary line established by recognition and acquiescence; and (b) awarding nominal damages of one dollar ($1.00) to Appellants. Trial Court Decision, 6/28/20, at 1-3. Appellants and Carmel filed post-trial motions on July 16, 2021. On December 13, 2021, the trial court denied all post-trial motions.

Appellants filed a notice of appeal on January 12, 2021. On February 1, 2022, Carmel filed a cross-appeal.[2] Appellants filed a motion to quash Carmel's appeal as untimely filed on February 16, 2022. *See* Motion to Quash Cross-Appeal (Appellants), 2/16/21, ¶¶ 12-13. On February 22, 2021, Carmel filed a motion to quash, claiming Appellants failed to serve Carmel with their notice of appeal. Motion to Quash Appeal (Carmel), 2/22/22, ¶¶ 3, 12, 15-16. Carmel also filed an application for permission to appeal, *nunc pro tunc*, on March 1, 2022. Our review of the record discloses that the parties' motions were premature.

_____

[2] This Court consolidated the appeal *sua sponte*. Order, 4/25/22.

On March 7, 2022, this Court entered an order indicating the trial court had not entered final judgment. Order, 418 EDA 2022 (Pa. Super. March 7, 2022); *see Prime Medica Assoc. v. Valley Forge Ins. Co.*, 970 A.2d 1149 (Pa. Super. 2009) (explaining an order denying post-trial motions is interlocutory and not appealable until entry of final judgment). We directed Appellants to praecipe for entry of judgment, and file with this Court a copy of the certified record reflecting entry of judgment. *See id.* Appellants complied with this Court's directive. We therefore consider the previously filed notices of appeal as if filed on the day the trial court entered judgment.[3] *See* Pa.R.A.P. 905(a)(5) ("A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof."). Consequently, we deny the parties' respective motions to quash. *See id.*

The parties and the trial court complied with Pa.R.A.P. 1925. Appellants present the following issues for our review:

> 1. Did the trial court err when it failed to correctly apply the law of Pennsylvania to recognize the sufficient, competent and uncontradicted evidence of record of the location of the boundaries of the parcel of land that Appellants are out of possession of, but to which they have a superior right to possess, and award the appropriate relief that returns Appellants to possession of their land?
>
> 2. Did the trial court err in failing to correctly apply the law of Pennsylvania to appropriately weigh the equities in this case,

---

[3] We corrected the caption to reflect entry of judgment.

- 6 -

where the evidence presented at trial demonstrates that the equities weigh in favor of the return of the land to Appellants?

Appellants' Brief at 7 (some capitalization omitted).

In its cross-appeal, Carmel presents the following issue:

Did the trial court err upon finding that Appellants/Cross-Appellees proved [Carmel] trespassed on [Appellants'] property pursuant to their theory of acquiescence of boundary?

Carmel's Brief at 2.

Before addressing the parties' claims, we recognize our scope and standard of review:

Our review in a non-jury case is limited to whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law. We must grant the court's findings of fact the same weight and effect as the verdict of a jury and, accordingly, may disturb the non-jury verdict only if the court's findings are unsupported by competent evidence or the court committed legal error that affected the outcome of the trial. It is not the role of an appellate court to pass on the credibility of witnesses; hence we will not substitute our judgment for that of the factfinder. Thus, the test we apply is not whether we would have reached the same result on the evidence presented, but rather, after due consideration of the evidence which the trial court found credible, whether the trial court could have reasonably reached its conclusion.

*Lynn v. Pleasant Valley Country Club*, 54 A.3d 915, 919 (Pa. Super. 2012) (citations omitted).

To prevail in an ejectment action:

the plaintiff must show title at the commencement of the action and can recover, if at all, only on the strength of his own title, not because of weakness or deficiency of title in the defendant. If a plaintiff in ejectment has presented at trial *prima facie* evidence that it has title to the property at issue, the burden then shifts to the defendant, unless the plaintiff's proof necessarily defeats the

plaintiff's claim of title. Conversely, if the plaintiff's claimed chain of title is faulty, the plaintiff has not shown a *prima facie* case, and the plaintiff's ejectment case fails. An ejectment action likewise fails if the plaintiff is not a *bona fide* purchaser.

***Becker v. Wishard***, 202 A.3d 718, 722 (Pa. Super. 2019) (citation omitted).

We first address Carmel's issue, as it challenges the trial court's finding of a consentable boundary line.

## Carmel's Cross-Appeal

Carmel challenges the trial court's finding that a consentable boundary line was formed through recognition and acquiescence. Carmel's Brief at 11. Carmel asserts:

(1) It is a bona fide purchaser of the Bodine Street property, and that Jet Stream, Appellants' predecessor in title, lost its claim to the disputed land upon Carmel's purchase. Therefore, Jet Stream, Appellants' predecessor in title, had no power to convey to Appellants title to property not described in its deed. ***See id.*** at 13.

(2) There is no evidence of consent or dispute/compromise to establish a consentable boundary line. ***Id.*** at 13-16.

(3) There is no evidence of an "adverse or hostile claim." ***Id.*** at 16. Carmel claims "acquiescence" denotes conduct by the lawful owner "consisting of failure on his part to assert his paramount rights or interests against the *hostile* claims *of the* adverse *user.*" ***Id.*** (emphasis in original, citation omitted).

(4) There is no case law supporting a consentable line established by the exterior wall of a building. ***Id.*** at 18.

(5) Appellants failed to prove 21 years of continuous adverse possession or tacking to establish the 21-year period. ***Id.*** at 19-21.

(6) Appellants waived their right to contest the recorded boundary lines, based upon a contingency in their Agreement of Sale for the

- 8 -

Fairmont Avenue property which acknowledged: "Any fences, hedges, walls and other natural or constructed barriers may or may not represent the true boundary lines of the property."

*Id.* at 22 (citation and emphasis omitted).

The doctrine of consentable line, which is a separate and distinct theory from adverse possession, is a rule of repose for the purpose of quieting title and discouraging confusing and vexatious litigation. *Plott v. Cole*, 547 A.2d 1216, 1220 (Pa. Super. 1988). To establish a binding consentable line by recognition and acquiescence, a party must prove: (1) each party has claimed the land on his side of the line as his own; and (2) the occupation has occurred for the statutory period of twenty-one years. *Id.* at 1221.

We explained:

"Acquiescence," in the context of a dispute over real property, "denotes passive conduct on the part of the lawful owner consisting of failure on his part to assert his paramount rights or interests against the hostile claims of the adverse user." *Zeglin* [*v. Gahagen*], 812 A.2d [558,] 562 n.5 [(Pa. 2002)] (quoting Edward G. Mascolo, *A Primer On Adverse Possession*, 66 CONN. B.J. 303, 312-13 (Aug. 1992)). A determination of consentable line by acquiescence requires a finding 1) that each party has claimed the land on his side of the line as his own and 2) that he or she has occupied the land on his side of the line for a continuous period of 21 years. *See Zeglin*, 812 A.2d at 561. Significantly, because the finding of a consentable line depends upon possession rather than ownership, proof of the passage of sufficient time may be shown by tacking the current claimant's tenancy to that of his predecessor. *See id.* at 566. To do so, however, the claimant must show "sufficient and credible proof of delivery of possession of land not within (but contiguous to) property described by deed of conveyance, which was previously claimed and occupied by the grantor and is taken by the grantee as successor in such interest." *Id.* "[W]hen a consentable line is established, the land

- 9 -

behind such a line becomes the property of each neighbor regardless of what the deed specifies. In essence, each neighbor gains marketable title to that land behind the line, some of which may not have been theirs under their deeds." ***Soderberg v. Weisel***, 455 Pa. Super. 158, 687 A.2d 839, 843 (Pa. Super. 1997) (internal citation omitted).

***Moore***, 921 A.2d at 5; ***see also Plauchak v. Boling***, 653 A.2d 671, 675 (Pa. Super. 1995) ("If adjoining landowners occupy their respective premises up to a certain line[,] which they mutually recognize and acquiesce in for the period of time prescribed by the statute of limitations, they are precluded from claiming that the boundary line thus recognized and acquiesced in is not the true one." (citation omitted)).

The Supreme Court further distinguished the consentable line doctrine as follows:

> [T]he doctrinal roots of acquiescence are grounded in adverse possession theory; indeed, occupancy with open manifestations of ownership throughout the statutory period will generally satisfy the traditional elements of adverse possession. Decisions involving acquiescence are frequently distinguishable from adverse possession cases only in that possession in the former are often based on a mistake as to the location of property lines.

***Zeglin***, 812 A.2d at 562 (citation and footnotes omitted).

Instantly, our review of the record discloses that Appellants, at trial, presented deeds establishing the continued ownership of the Fairmont Avenue property by Appellants and their predecessors:

(1) The 1997 deed to Sandra Frazier (Frazier), the grantee, ***see*** N.T., 11/30/21, at 15 (Exhibit 1);

(2) The 2016 deed from Frazier to Jet Stream Realty Group, LLC, ***see id.*** (Exhibit 2); and

- 10 -

(3) The 2018 Deed from Jet Stream Realty Group to Appellants, *see id.* (Exhibit 3).

Appellants further demonstrated continued possession of the Fairmont Property's cement backyard up to the northern wall of the now demolished Bodine Street property. Appellants' counsel read Frazier's October 14, 2019, deposition testimony into the record. *See id.* at 9-36. Frazier testified that she and her husband rented the Fairmont Avenue property from 1996 through their purchase of the property on October 23, 1997. *Id.* at 22. Frazier lived at the property continuously during that time period. *Id.* at 23-24.

Frazier described Appellants' Exhibit C as a photograph of the backyard of the property as it existed in 2016. *Id.* at 26-27. Frazier explained that her husband had replaced an older wooden fence with the chain link fence depicted in the photograph. *Id.* at 26. Throughout the time she resided at the Fairmont Avenue property, Frazier explained, a fence ran parallel to Bodine Street, starting from the back of her house and continuing, unbroken, to a post next to the house at 628 North Bodine Street. *Id.* at 27. Frazier confirmed that both the wooden and chain link fence were secured by a locked gate. *Id.* at 28-29. According to Frazier, she and her husband only unlocked the gate to take out the trash. *Id.* at 29. Frazier confirmed she and her husband had keys to the lock. *Id.*

Regarding the property's boundaries, Frazier identified the Bodine Street property's wall as forming the southern border of their Fairmont Avenue

property. *Id.* at 29-30. Frazier explained this border formed the southern boundary of their concrete backyard throughout their possession of the property. *Id.* at 30. She indicated that she and her husband used their enclosed backyard for grilling and for their plants. *Id.* at 34. Frazier also used the backyard to dry clothes. *Id.*

Jesse Sutow (Sutow), the owner of Jet Stream Realty Group, LLC (Jet Stream), the predecessor-in-title to Appellants, testified about the boundary line between the North Bodine Street and Fairmont Avenue properties. Sutow explained that Jet Stream had purchased the Fairmont Street property from Frazier, and following renovation, sold it to Appellants. *Id.* at 41-42. Sutow confirmed the boundaries of the Fairmont Street property remained consistent throughout Jet Stream's ownership. *Id.* at 42-44. According to Sutow, no one was allowed to enter the enclosed backyard of the Fairmont Street property without his permission. *Id.* at 50. Throughout Jet Stream's ownership, Sutow maintained the backyard, cleaned debris, performed exterior work, and replaced the cellar door. *Id.* at 59.

Ms. Rosborough, the current owner of the Fairmont Avenue property, described the boundaries of Appellants' backyard as

> running north to south, so from the back of our house to the wall at 628 North Bodine Street, to maybe five, five and a half feet, and not much longer running width ways east to west from the fence to the blue brick wall.

*Id.* at 77. Ms. Rosborough confirmed that a fence completely closed off the backyard area from the street. *Id.*

- 12 -

During Appellants' negotiation to purchase the property, Carmel requested Ms. Rosborough's permission to use the Fairmont Avenue property's backyard, including the disputed portion. *Id.* at 97. Appellants and their predecessor, Suttow, denied permission. *Id.*

After Appellants purchased the property, Amit Azoulay (Azoulay), Carmel's agent, contacted Ms. Rosborough for permission to use Ms. Rosborough's backyard. *Id.* at 89. Ms. Rosborough identified a July 3, 2018 email from Azoulay. *Id.* at 90. In that email, Azoulay acknowledged construction of the new foundation for the North Bodine Street property would require "about three feet of overdigging into [Appellants'] rear yard, at which point I will relocate the construction fence five to six feet into **your rear yard** for safety." *Id.* at 91 (emphasis added). Azoulay indicated that upon completion of the exterior siding of the North Bodine Street property, Carmel would "have the scaffolding and construction fence removed and return your rear yard to its original condition." *Id.* Although Carmel already had caused damage to the backyard, Ms. Rosborough denied permission. *Id.* at 101. In a subsequent email, Azoulay apologized for his construction crew's encroachment on the property. *Id.* at 108. Azoulay further offered to replace Appellants' gate, and mount the "gate's jam" onto Carmel's new building. *Id.* Nevertheless, Carmel continued its use of Appellants' backyard throughout construction. *Id.* at 112, 120.

Azoulay continued to recognize Appellants' claimed boundary line until his December 31, 2018, email to Ms. Rosborough, when he stated, in part:

It appears that you have a misunderstanding about the location of the boundary line separating our properties. We have not encroached on your property. The wall we are building is situated entirely on my property, per the measurement of our surveyor….

*Id.* at 132.

Carmel presented the testimony of Azoulay. Azoulay indicated that in 2018, he assumed the old wall of the North Bodine Street property marked its boundary with Appellants' property. *Id.* at 228. According to Azoulay, he learned of the location of the actual boundary line in November 2018. *Id.* Azoulay indicated that when the trial court denied an injunction, he continued with the construction project, as approved. *Id.* at 236.

The evidence reflects that from Frazier's ownership of the property in 1996 through December 31, 2018, each party claimed the land on their side of the North Bodine Street building's wall as their own, for a period of over 21 years. Regardless of the parties' deeds, the wall of the now demolished North Bodine Street property constituted the southern boundary between the properties, by recognition and acquiescence. *See Moore*, 921 A.2d at 5 ("[W]hen a consentable line is established, the land behind such a line becomes the property of each neighbor regardless of what the deed specifies. In essence, each neighbor gains marketable title to that land behind the line, some of which may not have been theirs under their deeds.").

- 14 -

Carmel's claim of *bona fide* purchaser status does not negate the finding of a consentable boundary line. Its agent, Azoulay, by email, recognized and apologized for Carmel's encroachment across the consentable boundary line. *See* N.T., 11/30/21, 91, 108. Further, Carmel's reliance on a contingency in Appellants' Agreement of Sale does not preclude the finding of a consentable boundary line, as even the deed's language cannot preclude such a finding. *See Moore*, 921 A.2d at 5. Because the evidence supports the trial court's finding of a consentable boundary line by recognition and acquiescence, Carmel's issue does not merit relief.

**Appellants' Appeal**

We address Appellants' two issues together, as both challenge the trial court's verdict following its finding of a consentable boundary line. Appellants first challenge the trial court's failure to relocate the boundary line and "form an award of relief." Appellants' Brief at 19. Appellants claim they presented *prima facie* evidence of the extent to which Carmel's new building encroaches on their Fairmont Avenue property. *Id.* at 20-21. Appellants rely on the testimony and report of their expert, Jonathan Tabas, P.E., P.L.S (Mr. Tabas). *Id.* at 21. According to Appellants:

> The record evidence shows that the area of encroachment is a slim, long rectangle, running along the two properties where they meet. The rectangle is bounded on the east and the west by the fence and the brick wall, respectively. These monuments mark two sides of the rectangle. Running between them from fence to brick wall are two parallel lines. Those two parallel lines make up the other two sides of the rectangle. The evidence shows that one of those parallel lines is the plane of the wall of [Carmel's] new

- 15 -

building, currently in place. The wall forms the third side of the rectangle, the north side.

*Id.* Appellants argue:

This fourth side of the rectangle, the south side, is a line that is parallel to the third side, is six inches across from the third side, and which line is now located on the ground under the structure that [Carmel] has built. The area inside this rectangle is the area that the Appellants have a superior right to possess, but that [Carmel has] encroached upon.

*Id.* (citing N.T., 11/30/20, at 197-200).

Appellants assert Mr. Tabas based his determination on a review of the report of Carmel's surveyor, the deeds, and city records used to confirm information in the deeds. *Id.* at 21-22. Appellants direct our attention to Mr. Tabas's expert report "that includes the arithmetical calculations and photos to explain how he came to his conclusion." *Id.* at 22. According to Appellants, Mr. Tabas determined the prior boundary line "by taking a six-inch measurement from a fixed and certain monument: the location of the current wall at 628 N. Bodine." *Id.*

Appellants rely on photographs of the encroachment and testimony establishing the encroachment is "at least six inches." *Id.* Appellants state:

Th[e] prior wall was memorialized in many photographs, which establish that it is a flat plane, another point that is not in dispute.

In order to complete the description of the boundaries of the encroachment, … the evidence shows plainly that the existence and location of the blue brick wall and the fence as boundaries is not in dispute, and appear again and again in photographs and the testimony of the witnesses. The testimony reflects these monuments did not move before or after construction (though

- 16 -

they were damaged by construction, their location as boundaries did not shift).

*Id.* at 23.

In their second issue, Appellants dispute the trial court's finding "that the equities do not favor the award of relief." *Id.* at 26. Appellants assert the equities favor

the return of the land to them, and not in favor of permitting [Carmel] to remain a permanent trespasser on land that the evidence clearly shows the Appellants have a superior right to possess.

*Id.* at 27. According to Appellants, there is no evidence that would support applying the doctrines of laches, inducement or acquiescence. *Id.* at 28-30. Further, Appellants claim Carmel's actions "rendered an exact measurement impossible." *Id.* at 33.

Our review of the record discloses ample support for the trial court's award of nominal damages, and not an award of the disputed property. At trial, Appellants presented no definitive testimony regarding the dimensions of the disputed property, or any basis upon which to fashion an equitable award.

Ms. Rosborough requested Carmel "return our property to the condition that we purchased it in, as [Azoulay] promised way back in the indemnity letter to the prior owners[.]" *Id.* at 137. Appellants did not identify or testify about any alternative remedy. *See id.* at 137-39. When asked to describe the dimensions of the disputed portion of the properties, Ms. Rosborough

offered an estimate of approximately six to nine inches. *Id.* at 140. She offered no evidence regarding the replacement cost of the fence demolished by Carmel. *See id.* at 152 (stating "we have not chosen to expend thousands of dollars to have a fence torn down and reinstalled at this point"). Ms. Rosborough admitted Appellants continued to use the back yard, that her grill remained in the same backyard location, and she can still exit the storm cellar door located in the backyard. *Id.* at 169. Ms. Rosborough offered no appraisals to reflect a diminution of the value of the property following encroachment by Carmel's new North Bodine Street building. *Id.* at 170. Further, she offered no evidence of a change in her property taxes. *Id.*

Appellants' expert, Mr. Tabas, confirmed he could not make a precise measurement between the old wall and the new wall constructed between the properties. *Id.* at 198. At best, "[w]ithin a reasonable margin of engineering certainty, it's at least six inches, might be even more than that, but six inches is a reasonable estimate[.]" *Id.*

Thus, while there is evidence supporting the trial court's finding of a consentable line by recognition and acquiescence, there is no evidence regarding the precise dimensions of the disputed portion of the property, or that the equities support returning possession of the disputed property to Appellants. Under these circumstances, Appellants' issues do not merit relief.

Motions to quash denied. Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/7/2022