J-A20023-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| FEIBO JIANG AND ZU WEI GU | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHERRY LYNN MACBURY A/K/A | : | |
| SHERRY L. GROSS,  ANA | : | |
| KRAUTHAMER, FOX AND ROACH, LP | : | No. 1781 EDA 2023 |
| D/B/A BERKSHIRE HATHAWAY HOME | : | |
| SERVICES, FOX AND ROACH | : | |
| REALTORS,  BO LIU AND LIBERTY | : | |
| REAL ESTATE ASSOCIATES, LLC | : | |
| | : | |
| | : | |
| APPEAL OF: SHERRY LYNN MACBURY | : | |
| A/K/A SHERRY L. GROSS | : | |

Appeal from the Judgment Entered October 23, 2023
In the Court of Common Pleas of Delaware County
Civil Division at No(s):  CV-2019-008961

BEFORE:  LAZARUS, P.J., PANELLA, P.J.E., and DUBOW, J.

MEMORANDUM BY PANELLA, P.J.E.:                **FILED DECEMBER 27, 2024**

Sherry Lynn MacBury appeals from the judgment entered in the Delaware County Court of Common Pleas after a verdict in favor of Feibo Jiang and Zu Wei Gu ("Appellees"). MacBury challenges whether the award of damages was based on evidence of record. After careful review, we affirm.

In 2018, Appellees bought a house from MacBury. MacBury was the original buyer of the house from the builder of the house, Toll Brothers. Appellees sought a warranty claim with Toll Brothers to replace their stucco sidings due to water filtration issues. Toll Brothers informed Appellees that MacBury had previously entered into a settlement agreement with Toll

Brothers terminating all warranties on the property in exchange for a cash payment.

Appellees sued MacBury alleging that MacBury concealed that she terminated the builder's warranty with Toll Brothers and that MacBury's omission fraudulently induced them to buy the property. The matter proceeded to trial on Appellees' breach of contract and Real Estate Disclosure Law claims.

A four-day jury trial was held from February 13, 2023 to February 16, 2023. Notably, at trial MacBury testified that Toll Brothers offered either to perform the remediation of the stucco with Hardie board or a cash settlement. N.T., 2/15/23, at 74-75. MacBury elected the cash payment, which was $110,000. She hired a contractor to repair the stucco which cost $35,000. The jury found that MacBury had breached the contract and awarded Appellees $75,000 in damages. The trial court also ruled in Appellees' favor on their Real Estate Disclosure Law claim.

MacBury filed a motion for post-trial relief which was denied. Prior to the denial of MacBury's motion for post-trial relief, MacBury filed a notice of appeal purporting to appeal from the jury verdict. At docket number 683 EDA 2023, we dismissed MacBury's appeal because "[v]erdicts and orders granting or denying post-trial motions are interlocutory and not ordinarily appealable." Order, 683 EDA 2023, 6/8/23 (citing **Prime Medica Assocs. v. Valley Forge Ins. Co.**, 970 A.2d 1149, 1154 n.6 (Pa. Super. 2009)).

Eventually, MacBury properly appealed from the trial court's entry of judgment. Thereafter, MacBury filed a Rule 1925(b) concise statement and the trial court filed a Rule 1925(a) opinion.

MacBury raises the following two issues for our review.

[1.] Did the trial court abuse its discretion in giving the curative instruction only to "disregard" Appellees' counsel's deliberate violation of the trial court's preclusion of the $110,000 settlement amount to the jury, rather than the requested limitation to evidence of record of $10,500.00?

[2.] Did the trial court commit an error of law in denying [MacBury's] request to limit any recoverable damages to $10,500.00 pursuant to [MacBury's] expert, Frank Peter, testimony in [MacBury's] motion for directed verdict (made at the close of [Appellees'] case), the motion for judgment not withstanding the verdict (made at sidebar after Appellees' closing argument and after the verdict was read), or the motion for post trial relief?

Appellant's Brief, at 4 (unnecessary capitalization and suggested answers omitted). These issues are interrelated and thus, we will address them together.

Both issues raised by MacBury relate to whether there was evidence of record to support the jury's award of damages. "[A] jury verdict may be set aside as inadequate when it appears to have been the product of passion, prejudice, partiality, or corruption, or where it clearly appears from uncontradicted evidence that the amount of the verdict bears no reasonable relation to the loss suffered by the plaintiff." *Mader v. Duquesne Light Co.*, 241 A.3d 600, 612 (Pa. 2020) (internal quotation marks omitted). "If the verdict bears a reasonable resemblance to the damages proven, we will not

upset it merely because we might have awarded different damages." *Hatwood v. Hosp. of the Univ. of Pennsylvania*, 55 A.3d 1229, 1240-41 (Pa. Super. 2012) (citation omitted); *see also Newman Dev. Grp. of Pottstown, LLC v. Genuardi's Fam. Mkt., Inc.*, 98 A.3d 645, 661 (Pa. Super. 2014) (*en banc*) ("damages in a breach of contract action must be proved with reasonable certainty.") (citation omitted).

MacBury argues that there was no evidence of record to support the jury's damages award. *See* Appellant's Brief, at 19-20. Instead, according to MacBury, the only evidence of damages was from Appellees' expert who testified that the cost of repairs was $10,500. *See id.* Thus, since the jury's $75,000 damages award greatly exceeded the evidence of damages, MacBury requests that we remand with instructions either for the trial court to enter a judgment with damages of only $10,500 or for a new trial. *See id.* at 25-26.

Appellees respond that the $110,000 settlement amount and the amount that MacBury spent on remediation, $35,000, were evidence of record. *See* Appellees' Brief, at 7-9. Based on this evidence, Appellees argue that it was reasonable for the jury to infer that the total cost of repair was the difference between the settlement amount and what MacBury spent on repairs and award damages in that amount. *See id.* at 14.

Our review of the record indicates that the $110,000 settlement amount and MacBury's expenditure on remediation were part of the evidence

submitted to the jury. MacBury herself testified on cross-examination that she received $110,000 in a settlement with Toll Brothers.

Q. And Toll Brothers at the time with approving your warranty claim they gave you two options, right?

A. That's what I testified to, yes.

Q. Yeah, so one option was to have Toll Brothers do the remediation?

A. That's correct.

Q. Yeah, and the options to remove all the stuccos and replace with Hardie plank, isn't that your understanding?

A. That's not what I said earlier, and that's not what I'm saying now. What I'm saying is that there were two options. One was that they would give me a cash settlement and I could engage a contractor to do the repairs, the work, or they would do the repairs via Hardie board.

Q. Hardie board? They would do the Hardie board? Toll Brothers would do the Hardie board repair?

A. Um-hum.

Q. Okay, and you chose the cash settlement?

A. That's correct.

Q. Yeah, and you got out $110,000 in cash?

A. Yes.

N.T., 2/15/23, at 74-75. MacBury's counsel did not object to these questions.

Immediately after this line of questioning, Appellees' counsel asked MacBury about her interactions with a prior prospective buyer.

Q. Okay. At the time you were dealing with the [inaudible] this is twenty -- back in 2016?

A. That's correct.

Q. They insist on having this builder warranty transfer to them, right?

*Id.* at 75. MacBury's counsel raised an objection which the trial court sustained because "I'm not sure that a previous transaction is relevant to the current transaction other than the negotiations between the stucco." *Id.* at 75-76. It is clear that the trial court's sustaining MacBury's counsel's objection related to MacBury's prior dealings with prospective buyers not the settlement with Toll Brothers. Therefore, the fact that MacBury received a $110,000 settlement from Toll Brothers was evidence of record.

MacBury also testified that she spent about $35,000 in hiring contractors to repair the stucco.

Q. You have hired W.L. Geesaman to do some repairs, right?

A. I did.

Q. Right, this was after you receive that settlement with Toll Brothers?

A. Yes.

Q. And you had spen[t] about $35,000 for the repairs?

A. No, it was more than that. I recall it being over $45,000. I think what you have is a quote.

Q. I'm showing you was previously marked number eight.

MR. BOMSTEIN: She means number seven.

\*\*\*

BY MS. YING ZHOU:

Q. It's the proposal from W.L. Geesaman and just look at the amount that he proposed.

A. Right.

Q. On page three it says $35,951.50, and this is you signed it right? Is this your signature?

A. Yes, this is...

Q. Okay, so...

A. ...a proposal I signed.

Q. So you paid $35,951.50 to W.L. Geesaman.

A. No. This is a proposal for work. Work gets completed, you pay as you go, and at the completion the dollar amount can be different than the proposal. I testified in deposition that I could not get the completed work document because it is on an app through a builder's report that I can no longer access four years later.

Q. Okay, so as we're here today you don't have any written document to support what you're saying that this is more than 35,000, do you?

A. No.

N.T., 2/15/23, at 110-11.

The judge instructed the jury that if they awarded damages "[i]t must be based on any evidence from the witness stand[,]" and "the evidence alone." N.T., 2/16/23, at 235. As explained above, the settlement payout that MacBury received from Toll Brothers ($110,000) and the amount that MacBury spent on repairs ($35,000) were entered into the record through MacBury's own testimony. It was within the jury's discretion to infer that the amount of

damages was the difference between the settlement amount and the amount spent on repairs. It was up to the jury to adopt the figure of $35,951.50 or another amount, not specified but mentioned by MacBury. Therefore, MacBury's arguments that the jury's award of damages was based on evidence not of record are without merit. Accordingly, we affirm.

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/27/2024